Opinion by Justice Lang
Before the Court is a petition for writ of mandamus brought by the National Collegiate Athletic Association (NCAA). The underlying proceeding is a negligence, wrongful death, and survival action in which real party in interest Debra Ploetz asserts that her husband Greg's death in 2015 from Chronic Traumatic Encephalopathy (CTE) was a result of concussions he sustained while playing football at the University of Texas from 1968 to 1972. Debra argues that the NCAA knew or should have known about the long-term dangers to student athletes from concussive and sub-concussive blows to the head, the causal connection between head trauma sustained in college sports and the development of CTE, and the rules, procedures, and protocols to prevent head trauma and prevent or slow the progression of CTE. She maintains that the NCAA's acts and omissions proximately caused Greg's death.
In this original proceeding, the NCAA complains of a July 30, 2017 discovery order requiring the NCAA to produce documents for a 67-year time period (1950 to present) regarding head trauma suffered by student athletes in any NCAA sport. The NCAA avers the time period is overbroad and the order is not properly limited to Greg's injury (CTE), the NCAA sport he played (football), or the dates of his alleged injury (1968-1972). After reviewing the petition, Debra's response, the NCAA's reply, and the mandamus record, we conclude the NCAA is entitled to some of the relief requested. Specifically, we deny the relief requested as to temporal scope and types of sports, but conditionally grant the writ to the extent the order permits discovery of injuries other than injuries resulting from blows to the head that cause or can cause brain injuries like the injuries suffered by Greg, i.e., concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE.
Background
Greg Ploetz played football at the University of Texas from 1968 to 1972. Greg *490 died in 2015 from CTE. Debra argues that CTE and Greg's death were caused by concussions Greg sustained while playing football at the University of Texas. She asserts that the NCAA knew or should have known of the risks of head trauma to student athletes, ways to prevent head injuries, and the causal connection between head injuries and the risk of developing brain diseases such as CTE and dementia before Greg played NCAA football. Debra maintains that the NCAA breached duties of care to Greg and fraudulently concealed information from Greg and that those acts and omissions proximately caused Greg's CTE, injuries, and death. Debra sought discovery of all documents in the NCAA's possession from 1906 to the present relating to student health and welfare. The NCAA objected to the discovery requests, arguing that the time period is overbroad and the order is not properly limited to Greg's injury (CTE), the college sport he played (football), or the dates of his alleged injury (1968-1972). Debra moved to compel discovery responses to her interrogatories and requests for production, and the trial court granted the motion to compel in part.
The order granting the motion to compel orders the NCAA to produce (1) all information sought from 1950 "to the ending date of the particular inquiry, including post-career information" and "shall include information for all sports categories requested by the plaintiffs," (2) discs of the documents produced in a federal class action (the Arrington litigation) and a pending West Virginia case (the Geishauser litigation), (3) the NCAA's communications with the University of Texas and the National Football League "which are at issue herein," and (4) all indices and catalogues currently available of materials maintained at any NCAA library or archive. The trial court also determined that Debra's requests for information concerning health and safety issues, including and not limited to head trauma, were overly broad. The trial court stated in the order that the NCAA is "under no obligation to provide information untethered to the issue that is central to this lawsuit namely head trauma."
At the hearing on the motion to compel, the NCAA's counsel agreed to produce documents from 1963 through January 1974, stating that "with respect to those 10 years, we have very few, if any, arguments on the substantive scope. We're essentially willing to give them whatever it is in that time period related to head trauma, concussions, football, football rules, all of these things that they're asking for during that 10-year time period." In its reply brief, the NCAA stated that it has produced the 185,000 pages of documents produced in the Arrington litigation for the period of 1994 forward and 35,000 pages of documents produced in the Geishauser litigation "for an overlapping time period." In her response brief, Debra noted that the NCAA has provided her counsel with a hard drive "purporting to contain" the documents produced by the NCAA in the Arrington and Geishauser lawsuits. The parties conceded in their briefs that, in light of those agreements and production, any disputes regarding the trial court's order compelling production of documents from 1963 through 1974 and from 1994 through the present have been eliminated. Based on these concessions, we construe the NCAA's complaint about the discovery order to be the requirement to produce documents: (1) related to any head trauma in any sport, and (2) for the periods from 1950 to 1963 and from 1974 to 1994.
Availability of Mandamus Review
Mandamus relief is available if the relator establishes a clear abuse of discretion for which there is no adequate *491 remedy by appeal. In re Deere & Co. , 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam). Generally, the scope of discovery is within the trial court's discretion. Dillard Dep't Stores, Inc. v. Hall , 909 S.W.2d 491, 492 (Tex. 1995) (orig. proceeding). However, the trial court must make an effort to impose reasonable discovery limits. In re Graco Children's Prods., Inc. , 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam); In re Am. Optical , 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). A trial court abuses its discretion by ordering discovery that exceeds what is permitted by the rules of procedure. "When a trial court orders discovery that exceeds that permitted by the rules of procedure, it abuses its discretion and the resisting party has no adequate remedy by appeal." In re Arpin Am. Moving Sys., LLC , 416 S.W.3d 927, 930 (Tex. App.-Dallas 2013, orig. proceeding) (citing In re CSX Corp. , 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam)); see also In re Weekley Homes, L.P. , 295 S.W.3d 309, 322 (Tex. 2009) (orig. proceeding) ("Mandamus relief is available when the trial court compels production beyond the permissible bounds of discovery").
Applicable Law
A. Scope of discovery
A party may generally obtain discovery of any unprivileged information relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought is "reasonably calculated to lead to the discovery of admissible evidence." CSX Corp. , 124 S.W.3d at 152 (quoting TEX. R. CIV. P. 192.3(a) ); see also Eli Lilly & Co. v. Marshall , 850 S.W.2d 155, 160 (Tex. 1993). Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. Am. Optical , 988 S.W.2d at 713. Thus, discovery requests must be "reasonably tailored" to include only relevant matters. Id. Evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." In re Nat'l Lloyds Ins. Co. , 532 S.W.3d 794, 808 (Tex. 2017) (orig. proceeding) (quoting TEX. R. EVID . 401 ). The party objecting to discovery "must present any evidence necessary to support the objection." Deere & Co. , 299 S.W.3d at 820-21 (quoting TEX. R. CIV. P. 193.4(a) ).
B. Overbroad discovery
"A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." CSX Corp. , 124 S.W.3d at 152-53 ; Am. Optical , 988 S.W.2d at 713. For example, in Deere & Co., the trial court properly narrowed discovery from "any model backhoe" as stated in the request for production, to only those products with handles and step assemblies similar to the allegedly defective model. Deere & Co. , 299 S.W.3d at 821.
Discovery orders requiring document production from an unreasonably long time period, from distant and unrelated locales, or related to products never used by the plaintiff are often found to be impermissibly overbroad. Am. Optical , 988 S.W.2d at 713 (abuse of discretion to order production regarding respiratory equipment the plaintiffs never alleged they used and ordering production of "virtually all documents regarding its products for a fifty-year period"); Dillard Dep't Stores , 909 S.W.2d at 492 (order overly broad because it required Dillard to produce every incident report filed between 1985 and 1990 in *492 all 227 Dillard stores nationwide); Texaco, Inc. v. Sanderson , 898 S.W.2d 813, 815 (Tex. 1995) (orig. proceeding) (requests for all safety and toxicology documents written by corporate safety director, including documents regarding other employees' exposure, regarding plants where the plaintiffs never worked and substances to which the plaintiffs never alleged exposure, and for an extended time period in which the plaintiffs did not work for the company, were overbroad). The Texaco court held that the request was overbroad, because it was "not merely an impermissible fishing expedition; it [was] an effort to dredge the lake in hopes of finding a fish." Texaco , 898 S.W.2d at 815.
Allowing discovery involving other products, similar injuries, or similar conditions is not improper, however, if there is a connection between the issues in the case and the discovery ordered. See, e.g., In re Deere & Co. , 299 S.W.3d at 821 (allowing discovery of backhoes with handles and step assemblies similar to the allegedly defective product in the case); see also In re Navistar, Inc. , 501 S.W.3d 136, 142 (Tex. App.-Corpus Christi 2016, orig. proceeding) (no abuse of discretion to order production of documents and information concerning 0.2 engine rather than 0.5 engine at issue because both engines utilized the technology at issue and, therefore, there was a connection between the alleged defect and the discovery order); In re H.E.B. Grocery Co. , 375 S.W.3d 497, 499 (Tex. App.-Houston [14th Dist.] 2012, orig. proceeding) (rejecting contention in slip-and-fall case that discovery of other incident reports must be limited to those involving the exact same condition or instrumentality as that involved in the underlying case).
Discussion
The NCAA complains of the temporal scope of the discovery requests and avers production should be limited to documents related to football injuries from concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE. On this record, we have determined that the trial court did not abuse its discretion by ordering discovery from 1950 through the present related to all NCAA sports. We do, however, find that the trial court abused its discretion by refusing to limit discovery to injuries from concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE.
A. Temporal scope
The order requires production from 1950 to the present, and the NCAA agreed to produce documents from 1963 through 1974 and from 1994 through the present. The disputed time frames total 30 years, i.e., 1950 through 1962 and 1975 through 1993. According to the NCAA, the ten-year period between 1963 and 1974 is the only relevant time period because it encompasses a reasonable number of years before, during, and immediately after Greg played football in the NCAA. The NCAA also argues that discovery is unnecessary prior to 1963 because any relevant information the NCAA may have had about an alleged connection between concussive and sub-concussive hits and long-term brain diseases between 1950 and 1962 would be discovered in documents from the 1963 to 1974 time frame. In other words, the NCAA contends that documents created between 1963 and 1974 would yield the same information as documents created between 1950 and 1963. The NCAA presented no evidence to support that proposition.
Debra argues that the temporal scope is not overbroad because (1) pre-injury and post-injury documents will show the *493 NCAA's historical knowledge and internal discussions of matters related to head trauma and player safety, (2) post-injury documents are likely to lead to evidence that the NCAA knew about the causal link between football and death-causing diseases, but failed to advise Greg or his family of those links and fraudulently concealed the information from them, and (3) post-injury discovery is relevant to the punitive damages claim and to show subsequent remedial measures. Debra also sought the post-injury discovery to support her defense against the NCAA's limitations defense.
The temporal scope of discovery ordered here is not overbroad considering the nature of the injury and the claims and defenses asserted. For example, Debra alleges that her husband's injuries were progressive and argues that the NCAA owed continuing duties to Greg and other players to inform them of research developments and new information related to the development and treatment of concussion-related injuries even after they sustained injuries playing for an NCAA team. Debra also alleges that the NCAA may have known of the ramifications of these injuries on student-athletes for years, and possibly decades, before and after Greg played football at the University of Texas. To support those allegations, Debra cites scholarly articles, commentaries, and medical and scientific journals from authorities such as the Journal of the American Medical Association, the Archives of Neurology and Psychiatry, the American Journal of Psychiatry, the Journal of Neurology Psychopathy, the New York State Journal of Medicine and other similar publications. Debra also cites NCAA publications and documents from 1933 forward, including the NCAA's Medical Handbook for Schools and Colleges, the NCAA News, the NCAA by-laws from the late 1960s and early 1970s, and the 2014 testimony of NCAA President Mark Emmert given to the U.S. Senate Committee on Commerce, Science, and Transportation. Discovery for the extended time period provides Debra the opportunity to discover what the NCAA knew and when the NCAA knew it regarding the cause, treatment, and prevention of Greg's injuries. Discovery of such information is not overreaching and is reasonably calculated to lead to the discovery of relevant, admissible evidence. Further, the burden of production, if any, should be minimized by the fact that the Arrington and Geishauser productions encompass twenty-three of those years, from 1994 to the present. Moreover, the trial court denied Debra's request for documents beginning as early as 1906. The trial court acted within its discretion by compelling production of documents from 1950 to the present.
B. Scope of injury
We next address the NCAA's contention that the trial court abused its discretion by permitting discovery of information related to "head trauma" rather than limiting discovery to the specific injuries suffered by Greg. The order states the NCAA is "under no obligation to provide information untethered to the issue that is central to this lawsuit, namely head trauma." The NCAA argues, however, that "head trauma" is overbroad because it will result in the production of documents related to head injuries, such as dental injuries, eye injuries, and facial abrasions, rather than limiting discovery to head trauma resulting in brain injuries like those at issue here. The NCAA maintains that discovery should be tailored to "admissible evidence relating to whether or not the NCAA was negligent for failing to prevent brain disease that allegedly resulted from concussive and sub-concussive blows to the head in college football from *494 1968 to 1972." The NCAA further states that the order should have narrowed the scope of discovery to "the injury Mr. Ploetz allegedly suffered (concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE)...."
Debra argues that requiring discovery regarding head trauma is not overbroad because (1) the trial court tailored the request from all documents related to health and safety issues to documents related to head trauma, (2) head trauma in college sports "involves blows to the head" regardless of whether the blow results in a concussion or similar injury, and (3) the NCAA's research studies use the terms "head trauma" and "head impact" to describe concussive and sub-concussive blows to the head. She also contends that discovery of documents regarding head trauma generally is necessary here because concussions as well as other head and brain injuries are relevant to her theory that her husband's concussions caused the CTE that ultimately took his life.
Two products liability cases, In re Graco Children's Products, Inc. and In re American Optical , are instructive here. In GracoChildren's Products, Inc. , the plaintiff was involved in a rollover accident in which her infant son died. Graco , 210 S.W.3d at 600. She sued Graco, alleging that defects in the harness clip of the baby's car seat failed to restrain him in the rollover. Id. She requested production of twenty categories of documents that mentioned or included anything with respect to any defect of any of Graco's products. Id. The Texas Supreme Court held there was "no apparent connection between the alleged defect and the discovery ordered," and the requests were impermissibly overbroad because they were not reasonably tailored to the relevant product defect. Id. at 600-01. The court rejected the plaintiff's arguments that she needed the discovery to show Graco did not test any of its products for rollovers and to show Graco's state of mind regarding safety and performance of five-point harnesses in rollover crashes. Id. at 601. Similarly, in American Optical , an asbestosis case involving 140 plaintiffs, the Texas Supreme Court granted mandamus relief and ordered the trial court to vacate a discovery order that required the company to respond to discovery requests that were not tied to particular products the plaintiffs claimed to have used. Am. Optical , 988 S.W.2d at 713.
On this record, evidence about head injuries that are not brain injuries, such as cuts, abrasions, and dental injuries, is not "tied to" nor does it have "an apparent connection" to injuries that are the basis of Debra's claims. See In re Graco Children's Prods. , 210 S.W.3d at 600 ; see also In re Am. Optical , 988 S.W.2d at 713. The requests and discovery order in this case are, therefore, overbroad.
Accordingly, we conditionally grant the petition for writ of mandamus on this issue and direct the trial court to limit discovery to documents related to the injuries Greg allegedly suffered (i.e., concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE) as requested by the NCAA. We note, however, that the NCAA averred in its reply brief that the NCAA does not intend to only produce documents that contain the specific language "concussive and sub-concussive blows to the head." Rather, the NCAA intends to produce documents "related to these same concepts even though they do not describe them in those specific terms." We construe this as a representation that the NCAA will not limit its search for responsive documents by using only specific key words, but will, instead, search for and produce responsive, non-privileged documents that address, *495 discuss, and/or are related to the concepts of concussive and sub-concussive blows to the head and to the brain diseases and injuries that may result from such blows. As such, we further direct the trial court to include language in the order prohibiting the NCAA from limiting its production to documents that use the specific terms concussive, sub-concussive, and concussion injuries or blows to the head.
C. Types of sports
Finally, the NCAA maintains that discovery of documents related to all sports is overbroad because Greg incurred his injuries playing football and not playing other college sports. The NCAA relies predominantly on products liability cases that limited production to documents related to the products used by the plaintiffs at issue. See, e.g., In re Sears, Roebuck and Co. , 146 S.W.3d 328, 333 (Tex. App.-Beaumont 2004, orig. proceeding) (discovery related to all asbestos products overly broad as to time period, locations, and product or exposure at issue); Am. Optical , 988 S.W.2d at 713 (production of all products for a fifty-year period was overbroad); Texaco , 898 S.W.2d at 814 (discovery of documents showing general corporate strategy to ignore health and safety laws not narrowly tailored to safety policies and practices as they relate to the circumstances involved in the case, i.e., exposure to asbestos, benzene, and other toxic substances). The NCAA also cites In re Houstonian Campus, L.L.C. , 312 S.W.3d 178 (Tex. App.-Hous. [14 Dist.] 2010), a defamation case in which the Texas Supreme Court vacated a trial court's order compelling production of names of all members of a health club rather than limiting production to the names of members who made the allegedly defamatory statements. In that case, the court determined that the names of members not accused of making the statements were not relevant to the subject matter of the action and were, therefore, not discoverable. Id. at 181.
The NCAA compares the names of members not accused of wrongdoing and information regarding products never used to requiring the NCAA to "produce documents related to injuries Mr. Ploetz never sustained and to sports he never played." In its reply brief, the NCAA opines that documents reflecting its efforts to prevent head trauma in a sport other than football "has no bearing on this litigation" because such documents do not "make any fact in this case more or less probable." The NCAA also notes that, although treatment and diagnosis of concussions "may not differentiate between sports," the discovery requested is not limited to diagnosis and treatment.
Debra disagrees, arguing that information about head trauma in other sports is discoverable here because there are connections between the issues in this case and the discovery ordered; namely, that athletes across all sports suffer concussive and sub-concussive blows and develop CTE and information about those injuries is "relevant to what the NCAA knew or should have known [about concussive and sub-concussive injuries] by the time Greg played football" for the University of Texas and what the NCAA knew or should have known of possible links between those injuries and CTE. Debra also contends the products liability cases cited by the NCAA are distinguishable from this case because there are connections between football-inflicted head trauma and head trauma incurred while playing other sports. As we understand Debra's position, she asserts that discovery should not be limited to the specific sport an athlete is playing when the athlete sustains a brain injury because brain injuries are not inherently different based on whether an athlete *496 sustained the injuries while playing hockey, engaging in a boxing match, playing football, or playing another sport.
Debra also alleges in part that the NCAA knew of the risks and long-term effects of concussive and non-concussive brain injuries sustained by NCAA athletes, but fraudulently concealed that information from Greg and deprived him of information he could have used to prevent or slow the progress of the CTE that caused his death. We make no determination as to the fraudulent concealment allegation. As to the scope of the sports about which discovery should be obtained, we agree with Debra. Information known to the NCAA regarding concussive and non-concussive blows to the head and the impact of those injuries on NCAA athletes is discoverable regardless of whether the NCAA obtained the information from studying brain injuries in soccer players, hockey players, football players, or athletes in other sports because the injury, not the sport, is the proper inquiry. There is, thus, a connection between Debra's allegations and the discovery ordered. See, e.g., Deere & Co. , 299 S.W.3d at 821 (allowing discovery of backhoes with handles and step assemblies similar to the allegedly defective product in the case); see also Navistar , 501 S.W.3d at 142 (ordering production of documents and information concerning different engine); H.E.B. Grocery Co. , 375 S.W.3d at 499 (permitting discovery of incident reports involving similar conditions). Accordingly, we conclude the trial court did not abuse its discretion in permitting discovery of documents related to all NCAA sports.
Conclusion
We deny in part and conditionally grant in part the NCAA's petition for writ of mandamus. We conditionally grant the petition for writ of mandamus on the issue of the scope of injury and direct the trial court to issue a written ruling vacating its July 30, 2017 discovery order to the extent it compels production of documents related to head trauma and issue a written ruling limiting discovery to documents related to the injuries of concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE. As noted above, the NCAA has acknowledged it does not intend to only produce documents that contain the specific language "concussive and sub-concussive blows to the head." Rather, the NCAA intends to produce documents "related to these same concepts even though they do not describe them in those specific terms." In light of those representations, we direct the trial court to include language in the order requiring the NCAA to produce documents related to the concepts of concussive and sub-concussive blows to the head even though the documents do not describe the concepts in those specific terms. We deny the petition for writ of mandamus as to the temporal scope of the discovery order and the types of sports included in the discovery order. We further direct the trial court to provide the NCAA at least thirty (30) days to produce the requested discovery. We order the trial court to issue these written rulings within fifteen (15) days of the date of this opinion. A writ will issue only if the trial court fails to comply with this opinion and the order of this date.