**Conditionally Granted and Opinion Filed April 9, 2020**



In The

# Court of Appeals
# Fifth District of Texas at Dallas

## No. 05-20-00246-CV

## IN RE THERMIGEN, LLC, Relator

**Original Proceeding from the 134th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-17-07119**

# MEMORANDUM OPINION
Before Chief Justice Burns and Justices Osborne, and Reichek
Opinion by Justice Reichek

The underlying proceeding involves burn injuries the Plaintiff allegedly sustained when she underwent a skin-tightening procedure on her neck. In this original proceeding, Relator Thermigen, LLC ("Thermigen" or "Relator") seeks a writ of mandamus challenging the trial court's January 23, 2020 discovery order as overbroad. Specifically, Relator objects that the trial court ordered it to produce (1) complaints of adverse events relating to the transcutaneous procedure, which was not the kind of procedure Plaintiff underwent; (2) information for adverse events other than thermal burn injuries; and (3) information related to injuries that occurred after the Plaintiff's injury.

After reviewing Relator's petition, Real Party in Interest's response, Relator's reply, the mandamus record, and sealed supplemental mandamus record, we conclude that Relator is entitled to partial relief because the order is overbroad insofar as it directs discovery for "all adverse events, regardless of injury," rather than limiting the discovery to adverse events relating to the generator's alleged temperature malfunctions.

## Background

Plaintiff underwent an elective skin-tightening procedure on her neck. That procedure was performed with the ThermiRF system, a radiofrequency generator designed and manufactured by Relator. After allegedly suffering burns during the procedure, she sued Relator and asserted negligence and strict liability claims based on the allegedly defective design, manufacture, and marketing of the device.

The ThermiRF system uses temperature-controlled radiofrequency technology to heat targeted areas of skin. According to the declaration of ThermiGen Quality Director John Anderson, the ThermiRF system can be used on skin surfaces or beneath the skin. The generator is the same for each procedure, but the handpiece and application differ depending on the type of procedure.

Transcutaneous procedures, which do not break the skin, involve recommended temperature settings of 40°C to 45°C and use an electrode with a larger contact surface that is attached to a handpiece ergonomically designed for the intended procedure. Percutaneous procedures (the kind that Plaintiff underwent)

involve an incision and the insertion of the electrode beneath the skin. These procedures employ higher recommended temperature settings of 50°C to 70°C, and the electrode is a cannula insulated sufficiently to expose only a 5mm or 10mm contact surface at the tip. A thermal camera is also used in percutaneous procedures to measure the heat temperature. A single user manual exists for the ThermiRF system, with separate instructions for the different modes of operation.

On January 25, 2019, Plaintiff served her Fifth Request for Production, which contained twelve detailed requests. In summary, she sought:

- information regarding reports about the ThermiRF system causing burns;

- information regarding reports about the ThermiRF system having temperature related problems (such as unexpected temperature spikes or inaccurate temperature readings);

- underlying reports regarding injury incidents listed in previously produced documents;

- information reflecting ThermiGen's decision to report or not report incidents of injury or malfunction of the ThermiRF system; and

- information pertaining to clinical trials for the ThermiRF system.

Relator objected on the grounds that the requests were overly broad, unduly burdensome, not reasonably limited in time, and not limited to "substantially similar" incidents. Plaintiff filed a motion to compel.

The trial court held a hearing on the motion to compel. At the hearing, Plaintiff argued that she was entitled to information about incidents, not just injuries,

because prior discovery had revealed numerous complaints about the ThermiRF system "shutting off too much" or having too many spikes in temperature. The trial court agreed and indicated that it was not inclined to limit its discovery order to "injury," finding the term too subjective. The court also addressed the distinction between percutaneous and transcutaneous procedures at length. After noting that both procedures utilized the same generator and possibly the same software and that there were problems reported with both applications, the court indicated it would order discovery for both percutaneous and transcutaneous procedures. The court also indicated that it would order discovery of incidents "related to temperature."

On January 23, 2020, the court issued a discovery order directing Relator to produce the following:

- "The complete investigation file for all adverse events, regardless of injury or bodily location, relating to the percutaneous procedures of the ThermiRF device"; and

- "[a]ll complaints of adverse events, regardless of injury or bodily location, relating to the transcutaneous procedures of the ThermiRF device."

In this mandamus proceeding, Relator complains the trial court's order is overbroad to the extent it compels production of complaints and documents that concern (1) incidents that did not result in injury, (2) injuries not involving thermal burns, (3) injuries that occurred after the date of Plaintiff's injury, and (4) transcutaneous procedures. In response, Plaintiff argues that she is entitled to information about incidents, not just injuries, because earlier discovery had

–4–

uncovered multiple adverse events involving temperature spike incidents and dangerous heat levels with the generator, and such information was relevant to her theory that this type of defect caused her injury. Plaintiff further contends that, because the same ThermiRF generator turns radiofrequency energy into heat regardless of application, she should be able to obtain discovery relating to both transcutaneous and percutaneous procedures.

### Standard of Review

Mandamus is warranted when the relator demonstrates a clear abuse of discretion and there is no adequate appellate remedy. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 136–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839 (Tex. 1992) (orig. proceeding). The Relator here has the burden of establishing both prerequisites to mandamus relief, and this burden is a heavy one. *See In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam). A trial court abuses its discretion if it reaches a decision that is so arbitrary and unreasonable that it amounts to a clear and prejudicial error of law or if it clearly fails to correctly analyze or apply the law. *In re Olshan Found. Repair Co., LLC*, 328 S.W.3d 883, 887–88 (Tex. 2010) (orig. proceeding).

An order that compels overly broad discovery is an abuse of discretion for which mandamus is the proper remedy. *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam). Whether discovery is overbroad in

products liability cases depends on whether the order covers products relevant to the case and is reasonable in its scope. *Id.*

**Discussion**

The rules of civil procedure provide that the scope of discovery includes any unprivileged information that is relevant to the subject of the action, even if it would be inadmissible at trial, as long as the information sought appears "reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a); *see also In re CSX Corp.*, 124 S.W.3d at 152 (explaining that scope of discovery is generally within trial court's discretion, but trial court must make effort to impose "reasonable discovery limits").

**1. "Adverse events, regardless of injury"**

Discovery should be limited to incidents involving circumstances relevant to the underlying lawsuit. *See In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 150 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding). Evidence of similar events is probative if an adequate predicate is established. *See In re HEB Grocery Co.*, 375 S.W.3d 497, 503 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding). An unrelated incident may be relevant and admissible if it and the incident involved in the lawsuit occurred under reasonably similar conditions, the two incidents are connected in some special way, or the incidents occurred by means of the same instrumentality. *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408,

411–12 (Tex. App.—Dallas 2006, pet. denied). "Reasonably similar" generally means the same type of occurrence. *Id.*; *In re Sun Coast*, 562 S.W.3d at 148.

In *Sun Coast*, the plaintiffs alleged Sun Coast was negligent in spilling or overfilling an above-ground storage tank of gasoline, resulting in hazardous vapors that ignited a fatal fire. 562 S.W.3d at 144. The plaintiffs sought, and the trial court compelled, Sun Coast's production of a "spill log" of all hazardous materials spills for the previous five and a half years. *Id.* at 147. The plaintiffs argued the requested information regarding prior hazardous materials spills was reasonably calculated to lead to the discovery of evidence pertaining to Sun Coast's knowledge of the existence of prior spills and whether such spills were caused by conduct similar to that alleged in the lawsuit. *Id.*

Sun Coast argued the trial court's order, as worded, was overbroad because it lacked any restrictions regarding subject matter or geographic scope and would require Sun Coast to produce information about other incidents that bore no relation to plaintiffs' claims. The appellate court agreed, concluding the trial court's order compelled production of some relevant information but cast "too wide a net" by failing to limit discovery to "incidents involving circumstances necessarily relevant to the underlying lawsuit." *Id.* at 148, 150. Specifically, the court observed the order would include hazardous materials spills that may have resulted from an automobile accident with one of Sun Coast's tankers on the highway, which bore no relation to the plaintiffs' theory of negligence. *Id.* at 150.

–7–

Here, Plaintiff's claims involve burn injuries she allegedly sustained during the procedure performed with the ThermiRF system and its temperature-controlled radiofrequency technology. But the trial court ordered Relator to produce (1) the complete investigation file for all adverse events, regardless of injury or bodily location, relating to the percutaneous procedures of the ThermiRF device and (2) all complaints of adverse events, regardless of injury or bodily location, relating to the transcutaneous procedures of the ThermiRF device. To the extent the order broadly directs discovery for "all adverse events," it necessarily captures incidents unrelated to temperature-related problems, such as temperature spikes or excessive heating, and therefore required Relator to produce evidence of incidents that were not relevant to the underlying suit. As such, the order is overbroad.

Relator also complains that the order should be limited to incidents involving only "injury," not merely "adverse events." Here, we cannot agree. Plaintiff alleges that Relator knew, or in the exercise of ordinary care should have known, that ThermiRF was defective and unreasonably dangerous to persons likely to use the product. Therefore, past instances relating to temperature-related problems are relevant to the issue of notice. *See Alza Corp. v. Thompson*, No. 13-07-00090-CV, 2010 WL 1254610, at \*7 (Tex. App.—Corpus Christi–Edinburg Apr. 1, 2010, no pet.) (mem. op.). While it is possible that not all responsive discovery will meet the standards for admissibility at trial, this is not the standard for relevance at the

discovery stage. *See In re Exmark Mfg. Co.*, 299 S.W.3d 519, 528 (Tex. App.—Corpus Christi–Edinburg 2009, orig. proceeding).

## 2. Transcutaneous procedures involving the ThermiRF device

Relator also complains that it is required to produce information regarding transcutaneous procedures that involve the ThermiRF device. However, courts have routinely permitted discovery involving other products if there is a connection between the alleged defect and the discovery sought.

For example, *In re Deere & Co.* involved a plaintiff who was injured after a backhoe loader step broke off under his weight and asserted, among others, a products liability claim. 299 S.W.3d at 820. The trial court ordered discovery regarding more than thirty product lines that included backhoes, tractors, and other loaders. *Id.* Deere objected that the order was overly broad, but the supreme court concluded that the discovery of other products was not an abuse of discretion because the order was limited to products with handles and step assemblies similar to the model at issue. *Id.* at 821.

Similarly, *In re Navistar, Inc.*, 501 S.W.3d 136 (Tex. App.—Corpus Christi–Edinburg 2016, orig. proceeding), involved the buyer of fifteen tractor-trailer trucks who brought a products liability action against the engine manufacturer, alleging that the 0.5 nitrous oxide engines were defective. *Id.* at 138. Our sister court concluded that the trial court did not its abuse discretion in ordering production of information

concerning 0.2 engines, in addition to the 0.5 engines at issue, since both engines utilized the same technology at issue.  *Id.* at 142.

And in *In re Caterpillar Inc.*, No. 09-13-00106-CV, 2013 WL 1932819 (Tex. App.—Beaumont 2013, orig. proceeding) (per curiam) (mem. op.), also a products liability suit, Emery Bowie died after a bulldozer moved unexpectedly in reverse. *Id.* at *1.  The plaintiffs sought documents related to another lawsuit brought against Caterpillar by Alphonso Lopez concerning a wheel tractor scraper.  *Id.*  Caterpillar objected to the request, arguing that the two machines involved different transmissions, gears, speed controls, steering, and engines.  *Id.*  Also, Lopez was injured while seated, while Bowie had been standing.  *Id.*  But, because there was evidentiary support that the *Lopez* accident was caused by a problem involving the electrical control system, and the allegedly defective Caterpillar machine in the *Bowie* case contained a similar system, our sister court of appeals concluded that the plaintiffs were entitled to information about the electronic control system in the *Lopez* suit.  *Id.* at *1–2.[1]

---

[1] This Court recently reiterated these principles in *In re National Collegiate Athletic Ass'n*, 543 S.W.3d 487, 496 (Tex. App.—Dallas 2018, orig. proceeding). In that case, plaintiff Debra Ploetz brought a wrongful death action against the NCAA for negligence, alleging that her husband Greg's death from Chronic Traumatic Encephalopathy (CTE) was a result of concussions he sustained while playing college football.  The NCAA argued that the trial court's order to produce documents related to head trauma of all types from all sports was overbroad.  We rejected the argument that the order should be limited to injuries sustained solely while playing football, because "[i]nformation known to the NCAA regarding concussive and non-concussive blows to the head and the impact of those injuries on NCAA athletes is discoverable regardless of whether the NCAA obtained the information from studying brain injuries in soccer players, hockey players, football players, or athletes in other sports because the injury, not the sport, is the proper inquiry." *Id.*  At issue in this lawsuit is the danger presented by the generator, and if and when Relator became aware of this danger; *how* it became aware of the danger, whether it acquired such knowledge because of problems attendant to transcutaneous or percutaneous procedures, is of no significance.

As shown in these cases, discovery in a products liability case need not be limited to the same product so long as there is a connection to the alleged defect. The case before us presents an even stronger argument because the allegedly defective product—the generator—is the same for the percutaneous and transcutaneous procedures. Thus, there is an obvious connection. Further, recognizing the differences between the two procedures, the trial court sensibly directed Relator to produce a narrower field of discovery for the transcutaneous procedures, requiring only "complaints" instead of the "complete investigation file" that must be produced for the percutaneous procedures. Accordingly, we conclude that the trial court did not abuse its discretion in permitting discovery for both procedures.

### 3. Injuries occurring after date of Plaintiff's injuries

Lastly, Relator asserts the trial court's order is overbroad in that it "concerns injuries which occurred after the date of [Plaintiff's] injury." Again, we cannot agree. In her third amended petition, Plaintiff alleged Relator placed into the stream of commerce the radio frequency device, i.e., the ThermiRF generator that is the subject of this litigation, and the device was unreasonably dangerous and defective at the time of the incident. Thus, discovery of injuries involving that product's temperature-related problems, whether occurring before or after the Plaintiff's injuries, is potentially relevant to this allegation and, at a minimum, is reasonably

calculated to lead to the discovery of admissible evidence. *See* TEX. R. CIV. P. 192.3(a). Thus, no abuse of discretion is shown here.

## Conclusion

We conclude the trial court abused its discretion only to the extent it failed to limit the subject matter of the discovery to adverse events involving the ThermiRF System generator's temperature-related problems. Accordingly, we conditionally grant the petition for writ of mandamus in part and direct the trial court to modify its order consistent with this memorandum opinion. The trial court's modified order is due within thirty days of the date of this opinion. The writ will issue only in the event that the trial court fails to comply.

/Amanda L. Reichek/
AMANDA L. REICHEK
JUSTICE

200246F.P05