**Petition for Writ of Mandamus Conditionally Granted in Part and Denied in Part and Opinion filed October 4, 2018.**



**In The**

# Fourteenth Court of Appeals

---

**NO. 14-18-00356-CV**

---

**IN RE SUN COAST RESOURCES, INC., Relator**

---

**ORIGINAL PROCEEDING**
**WRIT OF MANDAMUS**
**125th District Court**
**Harris County, Texas**
**Trial Court Cause No. 2017-08016**

---

**O P I N I O N**

Relator and defendant below, Sun Coast Resources, Inc., seeks mandamus relief from parts of an order signed on May 29, 2018 compelling the production of documents responsive to certain requests for production. *See* Tex. Gov't Code § 22.221; *see also* Tex. R. App. P. 52. The underlying suit is a wrongful death action

against Sun Coast. Real parties in interest allege that Sun Coast's negligence in offloading gasoline to an above-ground storage tank caused a fire and resulted in the death of Samuel Oliver.

In its petition for writ of mandamus, Sun Coast argues that the trial court abused its discretion by ordering the production of: (1) a log or list of "all hazardous materials spills" between January 1, 2013 and the present, and related documents, because the order is overbroad; (2) portions of certain current and former employees' personnel files because the order is not reasonably calculated to lead to the discovery of admissible evidence; and (3) certain electronic communications regarding the incident, including e-mails and text messages, that Sun Coast contends it has already produced or does not possess or control.

We conclude that portions of the challenged order constitute an abuse of discretion. We conditionally grant the petition with respect to:

(1) the portion of the May 29 order compelling production of the hazardous materials "spill log" and related documents under request for production numbers 1, 3, 7, 10, and 37, but only in part, as more fully explained below;

(2) the portion of the May 29 order compelling production of personnel files for Michael Pace, Bill Tilger, Jennifer Weldon, Art Flanagan, Rob Wynn, and Tammula Wynn under request for production number 17; and

(3) the portion of the May 29 order compelling production of electronic communications responsive to requests for production numbers 21–28.

We deny the petition as to all other requested relief. Our stay orders of May 4, 2018, May 10, 2018, and September 25, 2018, are lifted.

## Factual and Procedural Background

The real parties-in-interest and plaintiffs are Jodi Oliver, Individually and as Representative of the Estate of Samuel Oliver, Deceased, Jamie Oliver Scholhamer, and Katie Elizabeth Oliver ("Plaintiffs").

Plaintiffs allege the following in their First Amended Original Petition. Samuel Oliver ("Oliver") and his wife lived on the property where the incident occurred. Situated on the property were three above-ground 500-gallon tanks for storing diesel and gasoline, which Oliver used to store fuel for operating various equipment in maintaining his property. On April 7, 2016, Sun Coast delivered gasoline to Oliver's property.

Sun Coast's driver, Luis Marcano, was offloading gasoline from the tanker truck to the first of the three 500-gallon storage tanks when Oliver began using a propane mosquito fogger in the vicinity of the tanks. According to Plaintiffs, gasoline began to overflow from the tank and an explosion occurred. Oliver later died due to injuries from the fire.

Plaintiffs filed suit against Sun Coast and alleged causes of action for negligence and gross negligence, including claims of negligent hiring, training, supervision, and retention of Marcano. Among other things, Plaintiffs contend that Marcano was negligent in failing to safely deliver and offload gasoline, failing to adequately monitor the delivery due to inattentiveness, failing to prevent persons nearby from smoking or using an open flame, and failing to employ an automatic shut-off or spill prevention mechanism. Plaintiffs allege that Marcano's or Sun Coast's negligence proximately caused Plaintiffs' injuries.

3

Plaintiffs served Sun Coast with requests for production. Sun Coast asserted objections but produced some responsive documents. We detail the requests at issue later in this opinion. Plaintiffs moved to compel certain responses. Following a series of hearings and motions to reconsider, the trial court signed an order compelling production on May 29, 2018, which is the subject of this mandamus proceeding.

## Mandamus Standard

To obtain mandamus relief, a relator generally must show both that the trial court clearly abused its discretion and that relator has no adequate remedy by appeal. *In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135-36 (Tex. 2004) (orig. proceeding). A trial court clearly abuses its discretion if it reaches a decision so arbitrary and unreasonable as to amount to a clear and prejudicial error of law or if it clearly fails to analyze the law correctly or apply the law correctly to the facts. *In re Cerberus Capital Mgmt. L.P.*, 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam). This is true even when the area of law in question is unsettled. *See Huie v. DeShazo*, 922 S.W.2d 920, 927-28 (Tex. 1996). We review the trial court's determination of the legal principles controlling its ruling with limited deference. *See Walker v. Packer*, 827 S.W.2d 833, 840 (Tex. 1992) (orig. proceeding). The relator must establish that the trial court could have reasonably reached only one conclusion. *Id*.

## Applicable Law Pertaining to Discovery Orders

The scope of discovery is largely within the trial court's discretion. *In re Colonial Pipeline Co.*, 968 S.W.2d 938, 941 (Tex. 1998); *In re H.E.B. Grocery Co.*, 375 S.W.3d 497, 500 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding). Its

4

discretion, however, is not unlimited. *In re Am. Optical*, 988 S.W.2d 711, 713 (Tex. 1998) (orig. proceeding) (per curiam). Mandamus relief is appropriate if a trial court abuses its discretion and no adequate appellate remedy exists. *In re CSX Corp.*, 124 S.W.3d 149, 151 (Tex. 2003) (orig. proceeding) (per curiam). The party resisting discovery has the burden of establishing an abuse of discretion and an inadequate appellate remedy. *Id.*

Texas Rule of Civil Procedure 192.3 permits a party to "obtain discovery regarding any matter that is not privileged and is relevant to the subject matter of the pending action, whether it relates to the claim or defense of the party seeking discovery or the claim or defense of any other party." Tex. R. Civ. P. 192.3(a). Generally, unprivileged and relevant information is discoverable even if it would be inadmissible at trial, as long as the information is reasonably calculated to lead to the discovery of admissible evidence. *Id.*; *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d 219, 223 (Tex. 2016) (orig. proceeding) (per curiam); *CSX Corp.*, 124 S.W.3d at 152. The phrases "relevant to the subject matter" and "reasonably calculated to lead to admissible evidence" are to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 664 (Tex. 2009); *Axelson v. McIlhany*, 798 S.W.2d 550, 553 (Tex. 1990); *In re H.E.B. Grocery Co.*, 375 S.W.3d at 500; *see In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 223.

Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. Tex. R. Evid. 401. Information is "patently irrelevant" when reasonable minds would not differ that it has no tendency to prove or disprove

5

any issue involved in the subject matter of the suit and the information's irrelevancy is apparent from the face of the record. *See MCI Telecomm. Corp. v. Crowley*, 899 S.W.2d 399, 403 (Tex. App.—Fort Worth 1995, orig. proceeding); *In re Pilgrim's Pride Corp.*, 204 S.W.3d 831, 834 (Tex. App.—Texarkana 2006, orig. proceeding). We evaluate relevancy of discovery on a case-by-case basis by considering, among other things, the Plaintiff's claims as pleaded and the instrumentality of the alleged injury. *See In re H.E.B. Grocery Co.*, 375 S.W.3d at 502; *In re Booth*, No. 14-14-00637-CV, 2014 WL 5796726, at *2 (Tex. App.—Houston [14th Dist.] Oct. 21, 2014, orig. proceeding) (mem. op.); *In re Citizens Supporting Metro Solutions, Inc.*, No. 14-07-00190-CV, 2007 WL 4277850, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2007, orig. proceeding) (mem. op.).

As parties are not entitled to unlimited discovery, the trial court must impose reasonable discovery limits. *See In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam). Requests for information must be "reasonably tailored to include only matters relevant to the case" and may not be used as a "fishing expedition." *In re Am. Optical Corp.*, 988 S.W.2d at 713. For example, discovery requests must be limited to the relevant time, place, and subject matter. *See In re Xeller*, 6 S.W.3d 618, 626 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). Requests not so reasonably tailored as to time, place, or subject matter are overbroad as a matter of law. *See, e.g.*, *CSX Corp.*, 124 S.W.3d at 152; *In re Am. Optical*, 988 S.W.2d at 713; *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 492 (Tex. 1995); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995); *In re Brookshire Grocery Co.*, No. 12-06-00065, 2006 WL 2036569, at *2 (Tex. App.—Tyler July 21, 2006, orig. proceeding) (mem. op.). A central consideration

6

in examining overbreadth is "whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information." *In re CSX Corp.*, 124 S.W.3d at 153. An order that compels overbroad discovery is an abuse of discretion for which mandamus is the appropriate remedy. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 223; *Dillard Dep't Stores*, 909 S.W.2d at 492; *In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 183 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding).

## Analysis

### A. Hazardous Materials Spill Logs and Related Documents

The trial court's May 29 order compels the production of the following categories of documents related to hazardous materials spills:

- RFP 1: The log or list of all Hazardous Materials spills between January 1, 2013 and the present showing the date, location, Sun Coast employee, customer, and amount of release;

- RFP 3 and 7: All reports to governmental agencies for spills listed in RFP 1;

- RFP 10: All documents evidencing Sun Coast's investigations of each spill and overfill between January 1, 2013 and the present;

- RFP 37: All disciplinary actions taken by the Driver Review committee regarding spilling, filling, and overfilling between January 1, 2012 and the present.

According to Plaintiffs, Sun Coast maintains information referred to as a "spill log," which is an electronic report in the form of an excel spreadsheet that tracks all spills and "overfills" company-wide. The spill log is the subject of the portion of the May 29 order pertaining to request for production number 1. The portions of the

7

May 29 order pertaining to request numbers 3 and 7 are linked to request number 1. The portions of the order pertaining to request numbers 10 and 37 relate to the information expected to be maintained in the spill log, but the order as to those requests does not by its terms limit production to spills or overfills of hazardous materials.

Plaintiffs argue that the requested information regarding prior hazardous materials spills is reasonably calculated to lead to the discovery of admissible evidence pertaining to Sun Coast's knowledge of the existence of prior spills, and whether such spills were caused by conduct similar to that alleged here, namely, the driver' inattention, use of a cell phone, sitting in the cab during the filling process, or the failure to use any spill prevention or automatic shut-off device. Plaintiffs contend that such information is relevant to Sun Coast's alleged negligence and gross negligence claims. *See* Tex. Civ. Prac. & Rem. Code § 41.001.

We begin by observing that evidence of other accidents, near accidents, or related similar events is probative evidence in Texas courts, provided an adequate predicate is established. *See In re H.E.B. Grocery Co.*, 375 S.W.3d at 502–03; *Henry v. Mrs. Baird's Bakeries*, 475 S.W.2d 288, 294 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.). Insofar as admissibility is concerned, evidence of similar events need not be identical to the case at hand, but the circumstances must be reasonably similar. *See Mo. Pac. R. Co. v. Cooper*, 563 S.W.2d 233, 236 (Tex. 1978); *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. denied). Prior to admission of similar events, the plaintiff must first establish (1) a predicate of similar or reasonably similar conditions; (2) connection of the conditions in some special way; or (3) that the incidents occurred by means of the

8

same instrumentality. *Id*.; *Henry*, 475 S.W.2d at 294; *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411–12 (Tex. App.—Dallas 2006, pet. denied) ("An unrelated incident may be relevant and admissible if it and the incident involved in the lawsuit occurred under reasonably similar circumstances, the two incidents are connected in a special way, or the incidents occurred by means of the same instrumentality."). "'Reasonably similar' generally means the same type of occurrence." *Columbia Medical Center*, 198 S.W.3d at 411–12. The degree of similarity required depends on the issue the evidence is offered to prove. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004).

Further, notice of past similar incidents may strengthen a claim that an incident was foreseeable. *See Timberwalk Apartments, Partners, Inc. v. Cain,* 972 S.W.2d 749, 758 (Tex. 1998). *See also Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 348 (Tex. App.—Tyler 1998, pet. denied) (evidence of prior injuries from lifting heavy box was relevant to show that the defendant could have foreseen that the failure to provide necessary equipment or to require team lifting might have contributed to plaintiff's injury).

Accordingly, request for production number 1 seeks production of information that is relevant and reasonably calculated to lead to discovery of admissible evidence because the requested log may indicate that Sun Coast experienced other incidents of gasoline or other flammable hazardous materials spills or overfills that occurred under "reasonably similar circumstances" or "by means of the same instrumentality" as alleged here. *See In re H.E.B. Grocery Co.*, 375 S.W.3d at 504; *Columbia Med. Ctr. Subsidiary, L.P.*, 198 S.W.3d at 411–12; *see also In re Houstonian Campus, L.L.C.*, 312 S.W.3d at 183.

Though the May 29 order regarding request for production number 1 compels production of some relevant information, it may still cast too wide a net. Sun Coast argues that the order, as worded, is overbroad because it lacks restrictions pertaining to subject matter or geographic scope and thus will require Sun Coast to include in its production information regarding other incidents that bear no relation to Plaintiffs' claims. Although the scope of discovery is broad, requests must show a reasonable expectation of obtaining information that will aid the dispute's resolution. *In re CSX*, 124 S.W.3d at 152; *see also* Tex. R. Civ. P. 192 cmt. 1. In addressing Sun Coast's argument, we find guidance in decisions from our court and others examining whether certain discovery requests sought irrelevant information. This court, for example, evaluated the discoverability of incident reports in a premises defect suit in *In re H.E.B. Grocery Co*. There, the plaintiff slipped and fell due to a slippery condition on the floor. The plaintiff sought the production of incident reports for the store generally involving "slip and falls" or "trip and falls," specifically including those "caused by a liquid substance on the floor." *In re H.E.B. Grocery Co*., 375 S.W.3d at 503. Our court held that the discovery of incident reports pertaining generally to "other incidents" was overbroad because it would "necessarily implicate every accident or incident report in H.E.B.'s possession." *Id.* However, our court refused to limit the discovery of such reports to those pertaining solely to liquid on the floor or slippery conditions and instead allowed discovery of reports regarding slip and falls or trip and falls. *Id*. We stated that, although the majority of the plaintiff's allegations pertained to the slippery conditions of the floor, the plaintiff also alleged that H.E.B. was negligent in its policies and procedures for training, inspecting, and making the premises safe. *Id*. "Thus, incidents of debris

10

on the floor that presents a tripping hazard would lead to relevant information on this ground for relief just as incidents of liquid substances left on the floor." *Id.*

More recently, in *In re National Collegiate Athletic Association*, 543 S.W.3d 487, 496 (Tex. App.—Dallas 2018, orig. proceeding), plaintiff Debra Ploetz brought a wrongful death action against the NCAA for negligence, alleging that her husband Greg's death from Chronic Traumatic Encephalopathy (CTE) was a result of concussions he sustained while playing football at the University of Texas. The NCAA argued that the trial court's order to produce documents related to head trauma of all types from all sports was overbroad. Citing *In re American Optical* and *In re Graco*, the court of appeals agreed in part and held that the trial court abused its discretion by refusing to limit discovery to injuries from concussive and sub-concussive blows to the head that may result in brain diseases, such as dementia or CTE—the injury alleged in that case. *Id.* at 494-95. But the court of appeals rejected the argument that the order should be limited to injuries sustained solely while playing football, because "[i]nformation known to the NCAA regarding concussive and non-concussive blows to the head and the impact of those injuries on NCAA athletes is discoverable regardless of whether the NCAA obtained the information from studying brain injuries in soccer players, hockey players, football players, or athletes in other sports because the injury, not the sport, is the proper inquiry." *Id.* at 496.

These are not the only examples of courts limiting discovery when requests are broad enough to encompass information irrelevant to the suit. *See, e.g.*, *In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 225 ("[w]hile plaintiffs are entitled to discover evidence of defendants' safety policies and practices as they relate to the

circumstances involved in their allegations, a request for all documents authored by [the corporate safety director] on the subject of safety, without limitation as to time, place or subject matter, is overbroad."); *In re Deere & Co.*, 299 S.W.3d 819, 821 (Tex. 2009) (orig. proceeding) (per curiam) (trial court properly narrowed discovery from "any model backhoe" as stated in the request for production, to only those products with handles and step assemblies similar to the allegedly defective model); *In re Graco*, 210 S.W.3d at 601 (granting mandamus relief when discovery ordered had "no apparent connection" to alleged defect); *In re Am. Optical Corp.*, 988 S.W.2d at 713 (reversing discovery order regarding products plaintiffs never used); *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (holding discovery request that encompasses time periods, products, or activities beyond those at issue in the case to be overly broad); *Fethkenher v. Kroger Co.*, 139 S.W.3d 24, 30 (Tex. App.—Fort Worth 2004, no pet) (holding that a request for a search of previous incidents pertaining to automatic door malfunctions at all 188 stores in southwest region was overly broad; court noted that appellant "failed to narrow the request in a manner that would heighten its relevancy.").

Here, the order pertaining to request for production numbers 1, 3, and 7 is not limited as to subject matter other than to "hazardous materials spills." The order pertaining to request for production numbers 10 and 37 is even broader because it is not restricted to "hazardous materials spills," but rather applies more expansively to categories of "spills" or "overfills" generally. Consequently, the subject matter of the information and documents compelled is not limited to incidents involving circumstances necessarily relevant to the underlying lawsuit. *See K Mart Corp.*, 937 S.W.2d at 431 (order requiring description of all criminal conduct within last seven

12

years overly broad when dissimilar criminal conduct had no apparent connection to plaintiff's injury or cause of action). To be sure, Plaintiffs have a right to discover all relevant evidence so long as it is reasonably likely to lead to discovery of admissible evidence, but we conclude the order allows discovery of information that is not relevant. For example, relator argues, and we agree, that the spill log described in the order as to request for production number 1 would include hazardous materials spills that may have resulted from an automobile accident with a Sun Coast tanker truck on the highway. The circumstances of such an incident have little to do with the alleged negligence here—a fire risk created by hazardous vapors from spilling or over-filling during offloading or delivery.[1] *See* Tex. R. Evid. 401 (defining "relevant evidence" as that with any tendency to make consequential facts more or less probable). Plaintiffs' requests could have been drawn more narrowly and still obtain the necessary pertinent information. *See In re CSX*, 124 S.W.3d at 153; *In re H.E.B. Grocery Co.*, 375 S.W.3d at 502-03; *see also Fethkenher*, 139 S.W.3d at 30. Evidence of other accidents that are so dissimilar to the present alleged incident as to be irrelevant are not discoverable. Accordingly, we direct the trial court to vacate the portion of the order pertaining to request for production number 1 and reconsider appropriate tailoring language, with input from the parties,[2] that will allow Plaintiffs

---

[1] The Harris County Fire Marshall's office concluded, "After looking at the scene and interviewing the driver, the cause of the fire was gasoline vapors coming in contact with the open flame in the propane powered bug sprayer."

[2] *See In re TIG Ins. Co.*, 172 S.W.3d 160, 168 (Tex. App.—Beaumont 2005, no pet.) (burden to propound discovery complying with the rules of discovery is on the party propounding the discovery, and not on the courts to redraft overbroad discovery). As the parties are most familiar with the facts discovered to date, they are best suited to devise proper tailoring language regarding subject matter.

13

the discovery to which they are entitled but without including incidents that are so dissimilar to as be irrelevant. *See In re H.E.B. Grocery Co.*, 375 S.W.3d at 503. A spill log of "all hazardous materials spills" is too broad.

Request for production numbers 3, 7, 10, and 37—as they refer to request for production number 1—necessarily suffer from the same infirmity and we direct the trial court to vacate and reconsider the portion of the order as to those requests as well.

The limitations as to those requests should mirror the reasonably tailored subject-matter restrictions applicable to request for production number 1.[3]

We are not persuaded on this record that the order is unreasonably broad in the other respects Sun Coast advocates. In addition to the lack of subject-matter limitations, Sun Coast argues the order is overbroad because (1) it lacks limitations as to geographic scope and (2) customer or employee identities as to other incidents is irrelevant. We disagree. Sun Coast argues correctly that the order is unlimited as to geographic area, but it has not shown why the lack of geographic restriction would permit discovery of irrelevant incidents if the requests are appropriately tailored by subject matter, as we have held they must be. If an incident similar to the present

---

[3] Sun Coast challenges the part of the order that requires Sun Coast to produce documents under request for production number 37 regarding disciplinary actions taken by Sun Coast's Driver Review Committee concerning spilling, filling, and overfilling since January 1, 2012. According to the Employee Handbook, the Driver Review Committee has the power to discipline drivers and to memorialize its actions regarding such investigations. The Driver Review Committee was responsible for reviewing the conduct of employees, including Marcano. Sun Coast has not shown that this part of the order was a clear abuse of discretion. The trial court could have reasonably concluded that such order "appears reasonably calculated to lead to the discovery of admissible evidence." *See* Tex. R. Civ. P. 192.3.

14

one occurred in 2014, its circumstances would be discoverable even if it occurred in Wyoming. Whether such an incident would be admissible at trial is an issue for another day.

Discovering the identities of customers or employees involved in other relevant incidents is likewise not an abuse of discretion. *See* Tex. R. Civ. P. 192.3. Plaintiffs may be entitled to subpoena relevant information from those customers to determine whether the circumstances of other incidents are sufficiently similar to support admissibility.

We therefore conditionally grant the petition for writ of mandamus, in part, as to the portions of the May 29 order regarding request for production numbers 1, 3, 7, 10, and 37 because those requests are overbroad as to subject matter. We direct the trial court to vacate the May 29 order as to those requests and reconsider appropriate limitations. *See In re Nat'l Lloyds Ins. Co.*, 507 S.W.3d at 226-27; *In re H.E.B. Grocery Co.*, 375 S.W.3d at 506-07.

## B.    Personnel Records

The trial court compelled the production of the following categories of documents from the personnel files of ten persons (Laura Lipscomb, Michael Pace, Bill Tilger, Susan Tyler, Jennifer Weldon, Art Flanagan, Mandy Whitaker, Stratton Williams, Rob Wynn, and Tammula Wynn): (1) résumés; (2) performance evaluations, appraisals, and reviews; (3) any safety or other specialized training completed, including testing; (4) any hazardous materials or other safety related certifications received or completed; (5) termination notices, letters of resignation, or other documents within the personnel files describing the circumstances and date

15

of any termination of employment; and (6) for any former employee—last known contact information, including legal name, address, and phone number.

Plaintiffs have alleged that Sun Coast was negligent in the hiring, training, supervision, and retention of its "hazardous materials handlers relevant to the event which forms the basis of this suit." Plaintiffs argue that they are therefore entitled to discover information bearing on Sun Coast's corporate knowledge on all levels relative to Sun Coast's: safety practices in the delivery of hazardous materials; hiring; screening; training; testing; retraining; and the implementation and enforcement of safety rules, policies, and procedures. Plaintiffs assert that they have properly requested information regarding relevant employees involved in management, supervision, safety, Department of Transportation compliance, audits, training, electronic data systems, and dash-cams installed in trucks, and the preservation of personnel files and information related to certain employees' termination. Plaintiffs also argue that they are entitled to discover the qualifications (or lack thereof) of those placed in management positions and responsible for oversight of hiring, training, and supervision of its hazardous materials handlers, the documentation of employee training and activities, and custody of records regarding compliance with state and federal laws and rules.

Sun Coast contends the information ordered produced is not relevant because the ten individuals were not directly involved in the April 7, 2016 incident, did not train Marcano, or have not been alleged to have acted negligently themselves.

In *In re H.E.B. Grocery Co.*, the trial court ordered H.E.B. to produce "a copy of the job application, all documents showing safety-related training, job performance evaluations, reprimands or records of any disciplinary actions from the

16

employment file" for the manager on duty at the time of the incident for a five-year period. In her petition, the plaintiff alleged that H.E.B. was negligent in "failing to properly train its agents, servants, and/or employees regarding the proper way to make the premises reasonably safe." *In re H.E.B. Grocery Co.*, 375 S.W.3d at 505-06. Our court recognized that the manager's job application could show his previous experience and whether H.E.B. needed to train the manager. *Id*. at 506. We held that in ordering the production of the manager's "job application, safety-related training, job performance evaluations, reprimands or records of any disciplinary actions," the trial court could have reasonably concluded that this information could lead to the discovery of admissible evidence. *Id*. Significantly, the trial court's order compelled production of the personnel file for the store manager on duty at the time of the incident, not any other employee.

The trial court also ordered the production of copies of "certificates of attendance, regarding any training, school, examination or other similar instruction in cleaning or maintenance or safety of your floors" for every employee present in the store at the time of plaintiff's fall. *Id*. at 506. When asked in an interrogatory about safety procedures, H.E.B. responded that "[t]he procedure is that managers walk the store periodically, maintenance partners walk the store, partners observe the area they are in." *Id*. We recognized, however, that the requested records of employees who were not working in the particular area where the plaintiff slipped would not be relevant. *See id*. We therefore held that the trial court could have reasonably concluded that floor safety training records of managers, maintenance partners, and partners who were working in the area where the plaintiff fell could lead to relevant, admissible evidence. *Id*. But we held that the trial court's order to

17

produce training documents pertaining to all H.E.B. employees present in the store at the time of the incident was overbroad. *Id*. Essentially, we concluded that the requested training records as to employees who were not working in the area where the plaintiff slipped were irrelevant and outside the scope of discovery.

In *Kessell v. Bridewell*, 872 S.W.2d 837 (Tex. App.—Waco 1994, orig. proceeding), the Wightmans sued Safeco for underinsured motorist's coverage after their daughter died in an automobile accident with a drunk driver. They sued Safeco and Kessel for bad faith in the handling of the UIM claim. Relators (employees of Safeco) sought mandamus relief from an order allowing discovery of their performance evaluation records. *Id*. at 838. The court of appeals held that the trial judge was justified in finding that the performance-evaluation records were relevant because they might assist the plaintiffs in discovering other evidence in Safeco's possession that would be admissible in support of their bad-faith claims against Kessel and the company. *Id*. at 842.

*In re Mobil Oil Corp*., No. 09-06-392 CV, 2006 WL 3028063 (Tex. App.—Beaumont Oct. 26, 2006, orig. proceeding) (per curiam) (mem. op.), involved a discovery request for the personnel file of a witness, Johnny Casmore. The trial court ordered production of all documents "that are not subject to privacy rights or are not privileged." The plaintiffs argued that Casmore's personnel file was relevant with respect to facts surrounding his employment history and his involvement with asbestos. The court of appeals concluded that, "[a]ssuming some documents or information in the file may be shown to be relevant, it seems equally obvious the personnel file likely includes documents and information that have no relevance to this asbestos exposure claim. There is nothing about the location of a document in

the personnel file that necessarily makes it relevant to the pending action." *Id*. at *3. The court of appeals held that the discovery request for the entire personnel file was overbroad because it was "not tailored to ask only for documents that can be shown to be relevant to the asbestos exposure claim." *Id*.

With the above authority in mind, our conclusions as to the discovery ordered for each of the ten persons identified in the order are as follows.

Art Flanagan—Sun Coast represented to the trial court that it has never had an employee named Art Flanagan. Plaintiffs cite deposition testimony that Flanagan was involved in installing dash cam and other onboard computer recording equipment. But this testimony does not indicate that Flanagan was a Sun Coast employee; he may have been an independent contractor. The record does not support the inclusion of Art Flanagan in the order.

Bill Tilger was not employed by Sun Coast when the incident occurred on April 7, 2016, having left Sun Coast in 2010, six years earlier. Plaintiffs allege that Tilger implemented operations policies and procedures that are still in place today. Plaintiffs have not shown that Tilger had any supervisory authority over Marcano or was involved in Marcano's training or the incident. Tilger's alleged involvement in implementing policies and procedures more than six years before the accident does not, in our view, establish relevance as to his personnel file. Plaintiffs have not shown that the compelled categories of documents from his personnel file are "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a).

Michael Pace is a former fleet coordinator. His job entailed scheduling drivers and trucks. His only connection to the incident is that he retrieved the truck that Marcano drove to Oliver's property. Plaintiffs have not shown that Pace was involved in causing the incident or in Marcano's hiring or training. Plaintiffs have not shown that that the compelled categories of documents from his personnel file are "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a).

Rob Wynn was Marcano's driver manager on April 7, 2016. He went to the scene of the incident. Plaintiffs have not produced any evidence that Rob Wynn was involved in causing the incident or in Marcano's hiring or training. Further,"[t]he discovery methods permitted by these rules should be limited by the court if it determines . . . that: the discovery sought is . . . obtainable from some other source that is more convenient, less burdensome, or less expensive." Tex. R. Civ. P. 192.4(a). In *In re Mobil Oil Corp*., the court of appeals recognized that the information that the plaintiffs sought from a witness's personnel file "would likely be obtainable by deposition." 2006 WL 3028063, at *3. Plaintiffs have already had the opportunity to obtain the information they seek by deposition, and they have not shown that the compelled categories of documents from his personnel file are "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a).

Tammula Wynn is an employee in Sun Coast's Safety Department. Her involvement in this suit was limited to gathering documents responsive to the Plaintiffs' earlier Rule 202 proceeding. This is not sufficient to warrant the production of records from her personnel file. *See In re Liberty Cty. Mut. Ins. Co.*,

20

537 S.W.3d 214, 222 (Tex. App.—Houston [1st Dist.] 2017, orig. proceeding) (holding that the witness's "verification of the interrogatories is an insufficient basis to allow the deposition."). Plaintiffs have not produced any evidence that Tammula Wynn was involved in the incident or in Marcano's hiring or training. Plaintiffs have not shown that the compelled categories of documents from her personnel file are "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a).

Jennifer Weldon is Sun Coast's director of Human Resources. She had no responsibility for the training of employees. She gathered documents responsive to the original requests for production in the Rule 202 proceeding, but that by itself would not make records from her personnel file discoverable. *See In re Liberty Cty. Mut. Ins. Co.*, 537 S.W.3d at 222. She was a member of the Driver Review and Disqualification Committee responsible for the review and discipline of drivers, including Marcano. But Plaintiffs have not shown that her personnel file would be relevant to the alleged claims or that it is "reasonably calculated to lead to the discovery of admissible evidence." Tex. R. Civ. P. 192.3(a).

Stratton Williams is the former safety director Sun Coast. On April 7, 2016, Williams was responsible for implementing Sun Coast's safety rules. Williams was designated as Sun Coast's corporate representative in this suit and was deposed in the Rule 202 proceeding. He was fired a few days after his deposition, during which, Plaintiffs say, he admitted certain facts against Sun Coast's interests. It is possible that Williams's termination may be related to the April 7, 2016 incident or his performance as safety director. Because Williams was a manager with responsibility for formulating and implementing Sun Coast's safety rules, the trial court reasonably

21

could have found that the listed items from his personnel file are reasonably calculated to lead to the discovery of admissible evidence. *See In re H.E.B. Grocery Co.*, 375 S.W.3d at 505-06. Accordingly, Sun Coast has not shown that the part of the order pertaining to portions of Williams's personnel file was a clear abuse of discretion.

Susan Tyler is Sun Coast's current safety manager and was its environmental compliance manager on April 7, 2016. She trained drivers on spill prevention and was responsible for reporting spills to TCEQ and EPA. She was involved in spill incident investigations and research but did not go to the scene of the April 7, 2016 incident. Tyler maintains custody of Sun Coast's spill log. Plaintiffs have not produced any evidence that Tyler was involved in Marcano's hiring or training. Plaintiffs have had the opportunity to depose Tyler. Because it appears that Tyler was a manager with some responsibility for driver training and spill prevention and investigation, the trial court reasonably could have found that the production of the listed items from her personnel file are "reasonably calculated to lead to the discovery of admissible evidence." *See* Tex. R. Civ. P. 192.3(a); *In re H.E.B. Grocery Co.*, 375 S.W.3d at 505-06. Accordingly, Sun Coast has not shown that the part of the order pertaining to portions of Tyler's personnel file was a clear abuse of discretion.

Mandy Whitaker is a driver trainer. She performed an audit of Marcano's driver qualification file two years before the April 7, 2016 fire and found that the file was incomplete. She is no longer employed by Sun Coast. Sun Coast has not shown that the part of the order pertaining to portions of Whitaker's personnel file was a clear abuse of discretion. *See* Tex. R. Civ. P. 192.3(a).

22

Laura Lipscomb is a manager who oversees the training department at Sun Coast. Lipscomb, however, did not train Marcano. Because Lipscomb was in charge of and responsible for training drivers, the trial court reasonably could have found that the listed items from her personnel file are "reasonably calculated to lead to the discovery of admissible evidence." *See* Tex. R. Civ. P. 192.3(a); *In re H.E.B. Grocery Co.*, 375 S.W.3d at 505-06. Accordingly, Sun Coast has not shown that the part of the order pertaining to portions of Lipscomb's personnel file was a clear abuse of discretion.

In sum, we conclude that the trial court abused its discretion by ordering the production of the personnel files of Michael Pace, Bill Tilger, Jennifer Weldon, Art Flanagan, Rob Wynn, and Tammula Wynn. Sun Coast has no adequate remedy by appeal for these errors. *See In re Houstonian Campus, L.L.C.*, 312 S.W.3d at 183 (citing *Walker*, 827 S.W.2d at 843). We conditionally grant the petition as to the portion of the May 29 order compelling production of documents responsive to request for production number 17 as to Michael Pace, Bill Tilger, Jennifer Weldon, Art Flanagan, Rob Wynn, and Tammula Wynn. We deny the petition as to the other identified employees.

## C. Electronic Communications—Emails

The May 29 order compels the production of "any electronic communications regarding the events of April 7, 2018[4] which occurred at the location of the subject fire and this lawsuit (except for any privileged communications), including correspondence between Stratton Williams and Kathy Lehne **which has not been**

---

[4] We assume April 7, 2016 was intended.

**previously produced**." This portion of the order relates to request for production numbers 21-28. Request numbers 25-28 pertain specifically to emails. The record shows that Sun Coast either produced documents in response to request for production numbers 25-28 or stated that no responsive documents existed. Sun Coast argues that this part of the order is an abuse of discretion because, to the extent it grants relief related to emails, Sun Coast has already produced all responsive emails within its possession, custody, or control and the record does not show that any additional responsive and unproduced emails exist. We agree that a party cannot be compelled to produce documents that do not exist. *See In re Jacobs*, 300 S.W.3d 35, 46-47 (Tex. App.—Houston [14th Dist.] 2009, orig. proceeding) ("It is well-settled that a party cannot be forced to create documents that do not exist for the sole purpose of complying with a request for production."). The record presented does not contain any evidence that would support a finding that responsive emails exist but remain unproduced. Accordingly, Sun Coast has shown an abuse of discretion in this regard.[5] *See In re Jacobs*, 300 S.W.3d at 46-47.

---

[5] Sun Coast has a continuing duty to supplement its discovery responses. *See* Tex. R. Civ. P. 193.5.

24

## D.  Electronic Communications—Text Messages

The May 29 order also requires Sun Coast to produce information responsive to request for production numbers 21-24, which seek text messages pertaining to the April 7, 2016 incident between Stratton Williams and any other Sun Coast employees, including Kathy Lehne, Michael Pace, and Rob Wynn.  Sun Coast argues that the trial court abused its discretion because text messages stored on employees' personal cell phones are not within Sun Coast's possession, custody, or control and, therefore, Sun Coast cannot be compelled to produce any responsive text messages.

Text messages have been defined as "short messages [sent] over a cellular phone network, typically by means of a short message service (SMS)."  *See Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015).  They are electronic communications between users of mobile devices—such as cell phones, smart phones, or tablets—and transmitted over a cellular network or internet connection.  Plaintiffs have represented that a text message's content is stored on the user's device and may or may not be accessible through the user's cell phone provider.  We assume this to be the case for purposes of the instant proceeding.[6]

Our review of the present record reveals the following facts.  The cell phones in question are owned by the employees, not Sun Coast.  Sun Coast employees use their personal cell phones to talk, email, and send text messages for work-related matters, though the record does not establish that they are required to do so.  In their

---

[6] Text messages are digital information capable of storage either on a mobile device or remote server.  *See Riley v. California*, 134 S.Ct. 2473, 2484 (2017).  As the record in this case does not involve text messages stored remotely, or "cloud computing," *see id*. at 2491, we limit our analysis to discovery of digital text content presumably stored on the employees' personal devices.

monthly paychecks, employees receive a partial reimbursement for their individual cell phone bills. The record does not show the amount of reimbursement.

In response to a valid discovery request, a person is "required to produce a document or tangible thing that is within the person's possession, custody, or control." Tex. R. Civ. P. 192.3(b); *see In re Fairway Methanol LLC*, 515 S.W.3d 480, 495 (Tex. App.—Houston [14th Dist.] 2017, orig. proceeding). Possession, custody, or control of an item means that "the person either has physical possession of the item or has a right to possession of the item that is equal or superior to the person who has physical possession of the item." Tex. R. Civ. P. 192.7(b). Thus, a party must produce items it either physically possesses or constructively possesses, meaning the party has the right to obtain possession from a third party, such as an agent or representative. *See GTE Commc'ns Sys. Corp. v. Tanner*, 856 S.W.2d 725, 729 (Tex. 1993) (orig. proceeding). The party seeking production has the burden of proving that the party from whom production is sought has actual physical possession or the right to obtain possession of the requested items. *See id.*; *In re Methodist Primary Care Grp.*, 553 S.W.3d 709, 722 n.4 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding); *In re U-Haul Int'l*, 87 S.W.3d 653, 656 (Tex. App.— San Antonio 2002, orig. proceeding) (per curiam).

Plaintiffs do not contend that Sun Coast physically possesses any responsive text messages or the devices on which text messages may be stored. Plaintiffs acknowledge that the requested text messages are within the physical possession of Sun Coast's employees. Thus, the May 29 order cannot rest upon the factual premise that Sun Coast "has physical possession of the item[s]." Tex. R. Civ. P. 192.7(b).

26

Rather, Plaintiffs argue that Sun Coast has constructive possession over any responsive text messages in that Sun Coast has the right to obtain them from its employees. As support, plaintiffs cite Sun Coast's "Employee Handbook and Authorization," which allows Sun Coast to inspect employees' electronic devices—including personal devices owned by the employees—and remove any company "confidential information" thereon. Additionally, plaintiffs note that Sun Coast reimburses its employees for a portion of their phone bills each month, and employees use text messaging for work-related matters while in the course and scope of employment.

First, we consider the nature and extent of the employees' rights to the content of any responsive text messages stored on their personal cell phones or other mobile devices. As cell phones, smart phones, and similar mobile devices are personal property, it follows that the owners of such devices generally enjoy the full panoply of "fundamental"[7] property rights recognized by Texas law.[8] That cluster of rights necessarily includes the right to possess, use, or transfer the property, and to exclude others. *See Evanston Ins. Co. v. Legacy of Life, Inc.*, 370 S.W.3d 377, 383 (Tex. 2012) ("Some of the key rights in American jurisprudence that make up the bundle

---

[7] "Private property rights have been described 'as fundamental, natural, inherent, inalienable, not derived from the legislature and as pre-existing even constitutions.'" *Severance v. Patterson*, 370 S.W.3d 705, 709 (Tex. 2012) (quoting *Eggemeyer v. Eggemeyer*, 554 S.W.2d 137, 140 (Tex. 1977)).

[8] Property rights are created and defined by state law. *Consumer Serv. All. of Tex., Inc. v. City of Dallas*, 433 S.W.3d 796, 805-06 (Tex. App.—Dallas 2014, no pet.); *Reese v. City of Hunter's Creek Vill.*, 95 S.W.3d 389, 391 (Tex. App.—Houston [1st Dist.] 2002, pet. denied). The term "'property right' refers to any type of right to specific property, including tangible, personal property." *City of Corpus Christi v. Maldonado*, 398 S.W.3d 266, 270 (Tex. App.—Corpus Christi 2011, no pet.).

of property rights include the rights to possess, use, transfer and exclude others.")) (citing *Kaiser Aetna v. United States*, 444 U.S. 164 (1979)). A property owner's right to exclude others from his or her property is recognized as "'one of the most essential sticks in the bundle of rights that are commonly characterized as property.'" *Marcus Cable Assocs., L.P. v. Krohn*, 90 S.W.3d 697, 700 (Tex. 2002) (quoting *Dolan v. City of Tigard*, 512 U.S. 374, 384 (1994)); *see also Sanchez v. Southampton Civic Club, Inc.*, 367 S.W.3d 429, 441 (Tex. App.—Houston [14th Dist.] 2012, no pet.); II W. BLACKSTONE, BLACKSTONE'S COMMENTARIES 139 (Tucker ed. 1803). Consistent with long-standing Texas property law and the exclusionary interest inherent in property ownership, we conclude that owners of cell phones and other mobile communication devices generally have the right to possess the device itself and to exclude others from the content of text messages stored on the device.[9]

We next examine whether Sun Coast has an equal or superior right to possess text messages stored on its employees' personal cell phones or other mobile devices by virtue of the relationship between Sun Coast and its employees. *See* Tex. R. Civ. P. 192.7(b). For purposes of civil discovery, whether a party has the right to possession of an item[10] that is equal or superior to the party who has physical

---

[9] Separately from, but necessarily connected to, the exclusionary rights emanating from property ownership, Texas recognizes that cell phone owners also enjoy a subjective expectation of privacy in the contents of their cell phones. *See Granville v. State*, 423 S.W.3d 399, 405 n.16 (Tex. Crim. App. 2014). Thus, depending on the circumstances, an employer's search of an employee's personal cell phone would potentially implicate privacy concerns and may give rise to a claim for invasion of privacy. *See K-Mart Corp. Store No. 7441 v. Trotti*, 677 S.W.2d 632, 636–38 (Tex. App.—Houston [1st Dist.] 1984, writ ref'd n.r.e.) (holding evidence sufficient to support finding that employer's search of employee's personal locker invaded employee's privacy rights).

[10] Text messages are digital information and parties may obtain discovery of electronic data. *See* Tex. R. Civ. P. 192.3(b).

possession is a legal right based upon the relationship between the two. *See GTE*, 856 S.W.2d at 729; *In re Methodist Primary Care Grp.*, 553 S.W.3d at 722 n.4. As evident from our record, the relationship between Sun Coast and its employees is one of at-will employment. An "important and long-standing doctrine" in Texas,[11] the at-will employment relationship is binding neither on employer or employee and may be terminated by either the employer or the employee for any reason. *See, e.g.*, *Anderson v. Durant*, 550 S.W.3d 605, 624 (Tex. 2018); *Martin v. Credit Prot. Ass'n*, 793 S.W.2d 667, 669-70 (Tex. 1990). Generally, nothing about the at-will employment relationship alters an employer's or an employee's traditional rights to possess their respective property to the exclusion of the other. If, for example, an employer takes possession of an employee's personal property the employer may be liable for conversion,[12] and vice versa.[13] Plaintiffs have not cited a case holding that a garden variety principal-agent relationship creates in the principal a right to possess the agent's personal property that is equal or superior to the agent's rights of possession under Texas law, even when the agent may use the personal property at issue for work-related matters.

Employers and employees, however, may alter the nature and extent of their respective rights by express agreement or other terms of employment. *See Sawyer*,

---

[11] *Sawyer v. E.I. Du Pont de Nemours & Co.*, 430 S.W.3d 396, 402 (Tex. 2014).

[12] *See Ramin' Corp. v. Wills*, No. 09-14-00168-CV, 2015 WL 6121602, *11 (Tex. App.—Beaumont Oct. 15, 2015, no pet.) (mem. op.) (legally sufficient evidence supporting finding that employer converted personal property of at-will employee).

[13] *See Tex. Integrated Conveyor Sys., Inc. v. Innovative Conveyor Concepts, Inc.*, 300 S.W.3d 348, 377 (Tex. App.—Dallas 2009, pet. denied) (employer enforcing its rights over company property against employee; fact question on claims under Theft Liability Act and conversion).

430 S.W.3d at 403; *Byars v. City of Austin*, 910 S.W.2d 520, 523 (Tex. App.—Austin 1995, writ denied) (modification of at-will relationship must be by express agreement). Texas courts have "insisted that the parties be definite in expressing their intent" in this regard. *Sawyer*, 430 S.W.3d at 403. Plaintiffs contend such an agreement exists here. They point to Sun Coast's "Employee Handbook and Authorization," which we assume is signed by each employee, as support for the proposition that Sun Coast retains the right to access "company information" on employees' personal cell phones. But employee handbooks or manuals generally do not alter the at-will employment relationship,[14] and that is the case here. The document states specifically that it is not an employment contract and does not alter the at-will employment relationship.

Further, the "company information" Sun Coast retains the right to access on employees' personal devices is confidential and proprietary information owned by Sun Coast and disclosed to employees.[15] That information belongs to the company, not to the employee, as the confidentiality agreement makes clear. The employees agree that Sun Coast's confidential information remains its property and that Sun

---

[14] *See, e.g*, *Shell Oil Co. v. Humphrey*, 880 S.W.2d 170, 176 (Tex. App.—Houston [14th Dist.] 1994, writ denied) (holding no implied contract when employee handbook did not limit employer's right to terminate employment); *Day & Zimmermann, Inc. v. Hatridge*, 831 S.W.2d 65, 69 (Tex. App.—Texarkana 1992, writ denied) (stating that statement of company policy, without an express agreement, did not create contractual rights in employment).

[15] Specifically, the Handbook contains a confidentiality and non-disclosure agreement, which defines the "confidential information" to which it applies as: "certain information belonging to the Company which is of a confidential, private, trade secret and proprietary nature," and includes a plethora of information which is "developed or used by or in the possession of the Company, which is not generally known outside of the Company, and which gives the Company a competitive advantage."

Coast has the right to inspect any electronic device, even those owned by the employee, and to remove any "confidential information."  The agreement does not expressly grant Sun Coast the right to access or possess information stored on employees' cell phones other than the "confidential information" described in the agreement.  As the requested text messages at issue do not fall within the scope of "confidential information," the "Employee Handbook and Authorization" form does not apply to the present circumstance and does not create in Sun Coast a right to possess any responsive text messages that is equal or superior to the employees' rights of possession.[16]  Additionally, though employees may have sent text messages on work-related matters, there exists no evidence that Sun Coast has a written policy or agreement that all work-related communications stored on employees' personal cell phones belong to the company.

Plaintiffs also contend that Sun Coast has possession, custody, and control over its employees' text messages because Sun Coast reimburses a portion of their employees' monthly cell phone bills.  But the record does not provide any details as to the amount of reimbursement or whether it is intended to cover text messaging expense for work purposes.  The fact of a partial reimbursement of monthly cell phone bills does not, by itself, alter the employment relationship in a way that gives Sun Coast a right to possess its employees' text messages on their personal cell phones.

---

[16] It is the *right* to *possess* the item that counts.  *See* Tex. R. Civ. P. 192.7(b) (emphasis added).  Mere access to a document does not equate to possession, custody, or control.  *See In re Kuntz*, 124 S.W.3d 179, 184 (Tex. 2003) (orig. proceeding); *see also In re Shell E & P, Inc.*, 179 S.W.3d 125, 131 (Tex. App.—San Antonio 2005, orig. proceeding).

Texas has not recognized the rights Plaintiffs advocate absent an employment contract specifically granting those rights, which is not present here. We accordingly hold that an at-will employer generally does not have a right to possess text messages stored on its employees' personal cell phones that is equal or superior to the rights of the employees who own and have physical possession of the devices.[17] Thus, Plaintiffs have not shown that Sun Coast has possession, custody, or control over any text messages responsive to request for production numbers 21-24 and can be compelled to produce them. *See* Tex. R. Civ. P. 192.7. Our ruling, however, does not prevent Plaintiffs from seeking to obtain responsive and relevant text messages directly from the employees (or their providers, if available) through permissible discovery processes available under the rules of procedure.

We have found no on-point cases from any state court, but our holding aligns with the overwhelming majority of federal cases discussing the issue. *See Hayse v. City of Melvindale*, C.A. No. 17-13294, 2018 WL 3655138, at *7 (E.D. Mich. Aug. 2, 2018) (finding plaintiff failed to meet burden of demonstrating that personal devices belonging to defendant's employees were in possession, custody, or control of defendant); *Lalumiere v. Willow Springs Care, Inc.*, No. 1:16-CV-3133-RMP, 2017 WL 6943148, at *2 (E.D. Wash. Sept. 18, 2017) (holding that "company does not possess or control the text messages from the personal phones of its employees and may

---

[17] Our ruling, we hasten to add, pertains to the employment relationship in a private, as opposed to a public, context. *Cf.* Tex. Att'y Gen. Op. OR2003-1890 (declaring that personal e-mails were not exempt from the Texas Public Information Act solely because they were in the possession of employees and not governmental body); Tex. Att'y Gen. Op. OR2003-0951 (holding that governmental body could have right to access personal e-mails even though they were in possession of individuals and governmental body did not have a policy establishing its right to the information).

not be compelled to disclose text messages from employees' personal phones"); *Cotton v. Costco Wholesale Corp.*, No. 12-2731-JW, 2013 WL 3819974, at *6 (D. Kan. July 24, 2013); *see also Ewald v. Royal Norwegian Embassy*, No. 11-CV-2116 SRN/SER, 2013 WL 6094600, at *10 (D. Minn. Nov. 20, 2013).

Plaintiffs acknowledge these cases but rely on other federal district courts, which have held that that an employer possesses or controls relevant text messages on employees' personal phones when evidence exists that the employer directed the employees to use texts to communicate with their supervisors or customers, or the company had a written policy or agreement that all work-related communications are property of the company. *See In re Pradaxa (Dabigatran Etexilate) Prods. Liab. Litig.*, No. 3:12-md-2385-DRH-SCW, 2013 WL 6486921, at *17 (S.D. Ill. Dec. 9, 2013) (finding defendants had duty to ensure employees understood that litigation hold included text messages), *rescinded on other grounds*, *In re Petition of Boehringer Ingelheim Pharms., Inc.*, 745 F.3d 216 (7th Cir. 2014); *H.J. Heinz Co. v. Starr Surplus Lines Ins.*, No. 2:15-cv-00631-AJS, 2015 WL 12791338, at *4 (W.D. Pa. July 28, 2015). These cases are factually distinguishable and, in any event, we are not inclined to follow their reasoning when doing so would conflict with long-standing Texas property and employment law.

For these reasons, we conclude that the trial court abused its discretion in granting the motion to compel as to request for production numbers 21-24 when it ordered Sun Coast to produce text messages from the personal cell phones or mobile devices owned by its employees. Because Sun Coast has no adequate remedy by appeal for this error, we conditionally grant the petition as to this portion of the May

33

29 order.  *See In re Kuntz*, 124 S.W.3d at 184; *In re Fairway Methanol LLC*, 515 S.W.3d at 495.

## Conclusion

For the above reasons, we deny in part and conditionally grant in part the petition for writ of mandamus.  We direct the trial court to vacate the parts of its May 29 order that we have found in this opinion to constitute an abuse of discretion.

Sun Coast also complains that respondent violated this court's stay of all proceedings in the trial court by setting the case for trial starting on October 1, 2018 and in other respects.  Sun Coast has filed a motion to enforce our stay orders.  As Respondent has since vacated the orders relators alleged violated our stay, we deny Sun Coast's motion as moot.  Our stay orders of May 4, 2018, May 10, 2018, and September 25, 2018, are lifted.

We are confident the trial court will act in accordance with this opinion.  The writ of mandamus shall issue only if the trial court fails to do so.


/s/     Kevin Jewell
        Justice

Panel consists of Justices Donovan, Brown, and Jewell.