

# NUMBER 13-20-00503-CV

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI – EDINBURG

## IN RE C & J ENERGY SERVICES, INC.

## On Petition for Writ of Mandamus.

## MEMORANDUM OPINION

### Before Justices Benavides, Hinojosa, and Tijerina
### Memorandum Opinion by Justice Benavides[1]

Relator C & J Energy Services, Inc. filed a petition for writ of mandamus seeking to compel the trial court[2] to vacate its June 24, 2020 discovery order requiring relator to respond to specified requests for production from the real parties in interest, Jimmy Allen and Dale Allen. In the underlying case, the Allens sued relator and others for severe

---

[1] *See* TEX. R. APP. P. 52.8(d) ("When denying relief, the court may hand down an opinion but is not required to do so," but "[w]hen granting relief, the court must hand down an opinion as in any other case"); *id.* R. 47.4 (distinguishing opinions and memorandum opinions).
[2] This original proceeding arises from trial court cause number C-1816-B in the 93rd District Court of Hidalgo County, Texas, and the respondent is the Honorable Fernando G. Mancias. *See id*. R. 52.2.

personal injuries sustained by Jimmy when pressurized hydraulic fracturing equipment failed. Relator asserts generally that the trial court abused its discretion in ordering overbroad and irrelevant discovery because it is not properly limited "to the type of accident or issues involved in this case" and is not limited to a proper duration. We conditionally grant the petition for writ of mandamus in part and deny it in part as stated below.

## I. BACKGROUND

The Allens filed suit against relator and other defendants[3] for personal injuries sustained by Jimmy, the well-site manager, during a hydraulic fracturing process at a site known as the GD Houston Well #1 located in the Delaware Basin area of Ward County, Texas. In the Allens' second amended petition, they alleged that relator was a "well-known provider of onshore well construction, well intervention, well completion, and other oilfield services, including specializing in hydraulic fracturing operations." On the date of the incident, the defendants were testing the pressure of the pop-off valve and the fracturing equipment on a well. The Allens asserted that the defendants failed to properly secure a pipe nipple to the tubing head in the fracturing stack equipment, and Jimmy sustained serious injuries to his head, neck, and spine when the pressurized pop-off assembly failed, blew apart, and parts of the well assembly struck him. The Allens alleged that the pipe nipple fitting was not adequately tested under high pressure, the pipe nipple fitting should not have been used for high-pressure hydraulic fracturing operations, the

---

[3] The second amended petition reflects that the Allens filed suit against relator, Baker Hughes Oilfield Operations, LLC, Cameron Technologies Inc., Cameron Technologies US, Inc., Ervin Well Site Consultants, LLC, FESCO, Ltd., Jaguar Hydrostatic Testing, LLC, Key Energy Services, Inc., Key Energy Services, LLC, Nitro Fluids, LLC, RWLS, LLC, Schlumberger Technology Corporation, Sunbelt Rentals, Inc., Sunbelt Rentals Industrial Services, LLC, and Westbrook Manufacturing Company.

location of the pressure gauge made it impossible to determine the annulus pressure unless the well was opened, and safety restraints were not properly installed on the swage assembly. The Allens specifically asserted that relator was negligent in:

a.   Failing to properly assemble, install, operate, maintain and inspect the hydraulic fracturing equipment located at the GD Houston Well #1 site;

b.   Failing to properly fasten and secure the pipe nipple to the connector of the new tubing head;

c.   Failing to adequately test the hydraulic fracturing equipment at the GD Houston Well #1 site at pressure levels that were likely and expected to occur during hydraulic fracturing operations;

d.   Failing to utilize pipe connections that were proper and suitable for high-pressure hydraulic fracturing operations;

e.   Failing to install and utilize a pressure gauge that allowed personnel at the GD Houston Well #1 site to actively monitor annulus pressure levels without having to open the well;

f.   Failing to properly prepare, initiate or implement standard safe operating procedures for the operation of the hydraulic fracturing equipment at the GD Houston Well #1 site;

g.   Failing to inspect the GD Houston Well #1 site, the hydraulic fracturing equipment, and the rig in order to provide a safe and proper place for Allen and others to perform their work-related activities;

h.   Failing to adequately and properly supervise its employees and those employees of others under its supervisory control;

i.   Failing to adequately train its employees and those employees of others under its direction or control as to proper safety procedures which would have prevented the incident in question from occurring; and

j.   Failing to obtain or have the knowledge, training, and experience necessary to safely operate the hydraulic fracturing equipment at the GD Houston Well #1 site.

3

They further asserted that relator was negligent in:

a. Failing to properly inspect and install safety restraints on the fracturing stack of equipment located at the GD Houston Well #1 site;

b. Failing to properly prepare, initiate or implement standard safe operating procedures for the operation of the fracturing stack of equipment at the GD Houston Well #1 site;

c. Failing to use reasonable care in testing the fracturing stack of equipment so as to ascertain whether or not it was in a safe condition for hydraulic fracturing operations;

d. Failing to adequately and properly supervise its employees and those employees of others under its supervisory control; and

e. Failing to adequately train its employees and those employees of others under its direction or control as to proper safety procedures which would have prevented the incident in question from occurring.

The Allens alleged that all defendants were liable through negligent undertaking and respondeat superior, that all defendants committed gross negligence, and that Jimmy sustained an indivisible injury.

During discovery, the Allens propounded the same eighty-four requests for production to relator and the other defendants. Relator and the Allens disagreed regarding the scope and relevance of some of the requests for production. Ultimately, the Allens filed a motion to compel against relator. On June 24, 2020, the trial court granted the Allens' motion to compel in part and denied it in part per the order at issue in this original proceeding. On July 6, 2020, the Allens filed a motion for contempt and for sanctions against relator and others. They alleged, inter alia, that a third party to the litigation produced several emails from relator's employees regarding relator's investigation of the incident at issue which relator did not produce in discovery, and that

4

relator failed to produce other relevant documentation identified in its own discovery responses.

This original proceeding ensued immediately prior to the trial court's hearing on contempt. Relator and the Allens filed an agreed motion for temporary relief, which this Court granted, and ordered the date for production under the trial court's June 24, 2020 order, and all hearings pertaining to that production, to be stayed until ten days after final disposition in this Court or further ruling of the Court. *See* TEX. R. APP. P. 52.10. By eight issues, relator argues that the trial court abused its discretion in ordering it to:

1.    Produce all documents relating to any accident resulting in serious personal injury or death at any well site for the period beginning June 16, 2015 to present;

2.    Produce all documents relating to any accident from a failure of a pressurized component part of a well at any well site for the past 10 years;

3.    Produce all documents that discuss safety or operational issues concerning valves or component parts while under pressure with no time limit;

4.    Produce all engineering documents, drawings, schematics and models of the equipment, component parts or materials that were in use at the well where the accident occurred with no time limit;

5.    Produce the original petition or other charging document for any lawsuit, arbitration proceeding, or OSHA proceeding at any wellsite where an injury or death occurred for 10 years before June 16, 2017;

6.    Produce all documents in any lawsuit where [relator] has been a defendant [and] a person at the well site was injured or died as a result of failure of a component part of the well that was under pressure including all deposition transcripts, production, answers to interrogatories, and pleadings with no time limit;

7.    Produce all documents that discuss, refer to, or relate to transcripts or recordings of all depositions of corporate designees for the time period beginning June 16, 2015 to present; [and]

5

8. Produce all complaint files, letters, or similar documents identifying or describing same or similar matters as those alleged by [the Allens] for the preceding 5 years.

This Court requested that the real parties in interest, the Allens, or any others whose interest would be directly affected by the relief sought, including but not limited to Baker Hughes Oilfield Operations, LLC, Cameron Technologies Inc. and Cameron Technologies US, Inc., Ervin Well Site Consultants, LLC, Jaguar Hydrostatic Testing, Inc., Key Energy Services, Inc. and Key Energy Services, LLC, Nitro Fluids, LLC, and Westbrook Manufacturing Company, file a response to the petition for writ of mandamus. *See id.* R. 52.2, 52.4, 52.8. The Allens filed a response to the petition through which they assert that the requests for production are sufficiently specific and narrowly tailored and seek permissible and relevant discovery.

## II. STANDARD OF REVIEW

Mandamus is an extraordinary remedy issued at the discretion of the court. *In re Garza*, 544 S.W.3d 836, 840 (Tex. 2018) (orig. proceeding) (per curiam). To obtain relief by writ of mandamus, a relator must establish that an underlying order is void or is a clear abuse of discretion and there is no adequate appellate remedy. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d 708, 712 (Tex. 2016) (orig. proceeding); *see In re Prudential Ins. Co. of Am.*, 148 S.W.3d 124, 135–36 (Tex. 2004) (orig. proceeding); *Walker v. Packer*, 827 S.W.2d 833, 839–40 (Tex. 1992) (orig. proceeding).

An abuse of discretion occurs when a trial court's ruling is arbitrary and unreasonable or is made without regard for guiding legal principles or supporting evidence. *In re Nationwide Ins. Co. of Am.*, 494 S.W.3d at 712; *Ford Motor Co. v. Garcia*,

6

363 S.W.3d 573, 578 (Tex. 2012). We determine the adequacy of an appellate remedy by balancing the benefits of mandamus review against the detriments. *In re Essex Ins. Co.*, 450 S.W.3d 524, 528 (Tex. 2014) (orig. proceeding); *In re Prudential Ins. Co. of Am.*, 148 S.W.3d at 136.

A discovery order that compels production beyond the rules of procedure is an abuse of discretion for which mandamus is the proper remedy. *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d 486, 488 (Tex. 2014) (orig. proceeding); *In re Deere & Co.*, 299 S.W.3d 819, 820 (Tex. 2009) (orig. proceeding) (per curiam); *Texaco, Inc. v. Sanderson*, 898 S.W.2d 813, 815 (Tex. 1995) (per curiam); *see In re Shipman*, 540 S.W.3d 562, 565 (Tex. 2018) (orig. proceeding) (per curiam). "If an appellate court cannot remedy a trial court's discovery error, then an adequate appellate remedy does not exist." *In re Dana Corp.*, 138 S.W.3d 298, 301 (Tex. 2004) (orig. proceeding).

### III. DISCOVERY

The scope of discovery is generally within the trial court's discretion. *In re Graco Children's Prods., Inc.*, 210 S.W.3d 598, 600 (Tex. 2006) (orig. proceeding) (per curiam); *In re CSX Corp.*, 124 S.W.3d 149, 152 (Tex. 2003) (orig. proceeding) (per curiam). "Parties are 'entitled to full, fair discovery' and to have their cases decided on the merits." *Ford Motor Co. v. Castillo*, 279 S.W.3d 656, 663 (Tex. 2009) (quoting *Able Supply Co. v. Moye*, 898 S.W.2d 766, 773 (Tex. 1995) (orig. proceeding)). Thus, our procedural rules allow the broad discovery of unprivileged information that is "relevant to the subject matter of the pending action." TEX. R. CIV. P. 192.3(a); *see In re N. Cypress Med. Ctr. Operating Co.*, 559 S.W.3d 128, 131 (Tex. 2018) (orig. proceeding); *In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488. It is not a ground for objection "that the information sought will be

7

inadmissible at trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence." TEX. R. CIV. P. 192.3(a).

Information is relevant if it tends to make the existence of a fact that is of consequence to the determination of the action more or less probable than it would be without the information. *See* TEX. R. EVID. 401. The phrase "relevant to the subject matter" is to be "liberally construed to allow the litigants to obtain the fullest knowledge of the facts and issues prior to trial." *Ford Motor Co.*, 279 S.W.3d at 664; *see In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488. A request "is not overbroad merely because [it] may call for some information of doubtful relevance" so long as it is "reasonably tailored to include only matters relevant to the case." *Texaco, Inc.*, 898 S.W.2d at 815; *see In re Nat'l Lloyds Ins. Co.*, 449 S.W.3d at 488; *In re Graco Children's Prods., Inc.*, 210 S.W.3d at 600. We evaluate the relevancy of discovery on a case-by-case basis by considering, among other things, the pleadings and the instrumentality of the alleged injury. *In re Sun Coast Res., Inc.*, 562 S.W.3d 138, 146 (Tex. App.—Houston [14th Dist.] 2018, orig. proceeding); *see also In re Methodist Primary Care Grp.*, No. 14-17-00299-CV, 2017 WL 3480292, at *2 (Tex. App.—Houston [14th Dist.] Aug. 14, 2017, orig. proceeding) (mem. op.) (per curiam).

Nevertheless, a party's discovery requests must show a reasonable expectation of obtaining information that will aid in the resolution of the dispute. *In re CSX Corp.*, 124 S.W.3d at 152. A discovery request is "overbroad" when it encompasses "time periods, products, or activities beyond those at issue in the case" and, therefore, is not "reasonably tailored to include only relevant matters." *In re Alford Chevrolet–Geo*, 997 S.W.2d 173, 180 n.1 (Tex. 1999) (orig. proceeding); *see also In re Deere & Co.*, 299 S.W.3d at 820;

8

*In re Graco Children's Prods.*, 210 S.W.3d at 600; *In re Waste Mgmt. of Tex., Inc.*, 392 S.W.3d 861, 871 (Tex. App.—Texarkana 2013, orig. proceeding). Stated otherwise, "a discovery request that is unlimited as to time, place, or subject matter is overly broad as a matter of law." *In re United Fire Lloyds*, 578 S.W.3d 572, 580 (Tex. App.—Tyler 2019, orig. proceeding); *see In re Xeller*, 6 S.W.3d 618, 626 (Tex. App.—Houston [14th Dist.] 1999, orig. proceeding). An overbroad request is improper regardless of whether it is burdensome. *In re Allstate Cnty. Mut. Ins. Co.*, 227 S.W.3d 667, 670 (Tex. 2007) (orig. proceeding).

The rules of civil procedure allow the trial court to limit discovery under the following circumstances:

> The discovery methods permitted by these rules should be limited by the court if it determines, on motion or on its own initiative and reasonable notice, that:
>
> (a)     the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; or
>
> (b)     the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues.

TEX. R. CIV. P. 192.4(b); *see In re Alford Chevrolet–Geo*, 997 S.W.2d at 181. Additionally, the trial court may make protective orders "in the interest of justice" to protect the movant from "undue burden, unnecessary expense, harassment, annoyance, or invasion of personal, constitutional, or property rights" that, among other things, orders that: (1) the requested discovery not be sought in whole or in part; (2) the extent or subject matter of discovery be limited; (3) the discovery not be undertaken at the time or place specified;

9

(4) the discovery be undertaken only by such method or upon such terms and conditions or at the time and place directed by the court; or (5) the results of discovery be sealed or otherwise protected, subject to the provisions of Rule 76a. TEX. R. CIV. P. 192.6(b); *In re United Fire Lloyds*, 578 S.W.3d at 578–79. Although a trial court may exercise some discretion in granting a protective order, such discretion is not without bounds. *In re Collins*, 286 S.W.3d 911, 919 (Tex. 2009) (orig. proceeding). The party seeking a protective order must show particular, specific, and demonstrable injury by facts sufficient to justify a protective order. *Id.*

## IV. ANALYSIS

The specific issues presented in relator's petition for writ of mandamus are not supported by citation to the record or to the specific requests for production at issue, and similarly, relator's argument and analysis are not structured according to the issues stated. *See* TEX. R. APP. P. 52.3(f), (h). However, relator has made clear and concise arguments for the contentions made in this original proceeding, and we will therefore analyze the relator's assertions of error according to the structure of the argument provided in the petition for writ of mandamus. *See id.* R. 52(h).

### A. Requests for Production Nos. 51 and 67

These requests for production seek discovery about other accidents resulting in personal injury. These requests for production and corresponding objections are as follows:

**REQUEST FOR PRODUCTION NO. 51:**

Produce all documents created, published, distributed or generated in the two years prior to the Work starting at the Well through present that discuss, refer or relate to any accidents resulting in serious personal injury or death

10

at any other well sites, including without limitation any liability determinations, reports or databases.

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 67:**

Produce all documents that discuss, refer or relate to all instances in which anyone has been injured in an accident involving any part or Component Part, including without limitation, a swage or any other part or Component Part that was pressurized at any wellsite where you had a contract or workers present during the ten years preceding the Work regardless of whether anyone working on your behalf was present when the injury or death occurred.

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

The definitions associated with the requests for production define the "Well" as the "GD Houston Well #1," and define the "Work" as "any service, maintenance, labor, construction, operation or anything else done at the GD Houston Well #1 from the period starting on June 9, 2017 through and including June 28, 2017." Under the definitions, "Component Part" means "a uniquely identifiable input, part, piece, assembly or subassembly, system or subsystem, that (1) is required to complete or finish an activity, item, or job, (2) performs a distinctive and necessary function in the operation of a system, or (3) is intended to be included as a part of a finished, packaged, and labeled item." The definitions instruct that "Components are usually removable in one piece and are considered indivisible for a particular purpose or use." As relevant to relator's arguments regarding the foregoing requests for production, the trial court's order limits request for

11

production number 67 to: "only the Original Petition/Complaint, Arbitration Demand, criminal charging documents or other paper that constitutes the initiation of any proceeding; this includes all documents that were filed or served on Defendant by OSHA or any other federal, state or other governmental or regulatory entity that is deemed to initiate a complaint."

Relator asserts that these requests "are overly broad and fail to limit discovery to incidents involving circumstances necessarily relevant to the underlying lawsuit." In support of this contention, relator argues that there are many different steps involved in drilling a well, wells contain multiple component parts, there are various pressurized stages in the drilling process, and accidents and injuries can occur that are unrelated to the specific accident involved in the underlying lawsuit. Relator also asserts that request number 67 is not limited to incidents where it "had anyone present on the site."

The Allens argue, in contrast, that instances in which relator performed work at a well site where someone was injured or died "are relevant to [their] ability to establish a duty of care, liability, and damages." They contend that "[e]vidence of prior instances in which [relator] may have been negligent in performing its work—particularly involving any component part that was pressurized at a wellsite—is also relevant to evaluate the magnitude of the risks presented in a particular situation and whether [relator] should have foreseen the possibility of injury" to Jimmy. They assert that this discovery is relevant in the context of their theory of liability, which includes specific allegations about "the relationship between negligent pressure management and [relator's] negligent failure to inspect well sites, train its employees, and supervise its employees." They specifically argue that "[a]ny serious injury or fatality at a wellsite in the two years prior to Jimmy

12

Allen's accident is relevant to the determination of whether [relator's] training, supervision and inspection procedures were deficient and whether [relator] had reason to know that they were deficient." Finally, they argue that relator has failed to produce responsive documents pertaining to a well site explosion occurring three months prior to Jimmy's injury which resulted in an operator's skull fracture and head trauma, and which further resulted in relator taking corrective measures.

The Fourteenth District Court of Appeals recently analyzed the discovery of other accidents or incidents as follows:

> We begin by observing that evidence of other accidents, near accidents, or related similar events is probative evidence in Texas courts, provided an adequate predicate is established. *See In re HEB Grocery Co.*, 375 S.W.3d at 502–03; *Henry v. Mrs. Baird's Bakeries*, 475 S.W.2d 288, 294 (Tex. Civ. App.—Fort Worth 1971, writ ref'd n.r.e.). Insofar as admissibility is concerned, evidence of similar events need not be identical to the case at hand, but the circumstances must be reasonably similar. *See Mo. Pac. R. Co. v. Cooper*, 563 S.W.2d 233, 236 (Tex. 1978); *McEwen v. Wal-Mart Stores, Inc.*, 975 S.W.2d 25, 29 (Tex. App.—San Antonio 1998, pet. denied). Prior to admission of similar events, the plaintiff must first establish (1) a predicate of similar or reasonably similar conditions; (2) connection of the conditions in some special way; or (3) that the incidents occurred by means of the same instrumentality. *Id.*; *Henry*, 475 S.W.2d at 294; *Columbia Med. Ctr. Subsidiary, L.P. v. Meier*, 198 S.W.3d 408, 411–12 (Tex. App.— Dallas 2006, pet. denied) ("An unrelated incident may be relevant and admissible if it and the incident involved in the lawsuit occurred under reasonably similar circumstances, the two incidents are connected in a special way, or the incidents occurred by means of the same instrumentality."). "'Reasonably similar' generally means the same type of occurrence." *Columbia Medical Center*, 198 S.W.3d at 411–12. The degree of similarity required depends on the issue the evidence is offered to prove. *Nissan Motor Co. Ltd. v. Armstrong*, 145 S.W.3d 131, 138 (Tex. 2004).
>
> Further, notice of past similar incidents may strengthen a claim that an incident was foreseeable. *See Timberwalk Apartments, Partners, Inc. v. Cain*, 972 S.W.2d 749, 758 (Tex. 1998)[; *see*] *also Brookshire Bros., Inc. v. Wagnon*, 979 S.W.2d 343, 348 (Tex. App.—Tyler 1998, pet. denied) (evidence of prior injuries from lifting heavy box was relevant to show that the defendant could have foreseen that the failure to provide necessary

13

equipment or to require team lifting might have contributed to plaintiff's injury).

*In re Sun Coast Res., Inc.*, 562 S.W.3d at 148. Although the concepts of discovery and admissibility are necessarily related, we bear in mind that "the scope of discovery is obviously much broader than the scope of admissible evidence." *In re Exmark Mfg. Co.*, 299 S.W.3d 519, 528 (Tex. App.—Corpus Christi–Edinburg–Edinburg 2009, orig. proceeding [mand. dism'd]). In analyzing the discovery of other accidents or incidents, "we consider the plaintiff's claims as plead, the instrumentality of the injury, as well as the potential relevance of similar conditions at other premises at issue." *In re HEB Grocery Co.*, 375 S.W.3d 497, 502 (Tex. App.—Houston [14th Dist.] 2012, orig. proceeding); *see also In re HEB Grocery Co.*, No. 13-10-00533-CV, 2010 WL 4523765, at *5 (Tex. App.—Corpus Christi–Edinburg 2010, orig. proceeding [mand. denied]) (mem. op.) (holding that a request for search beyond the premises of injury was not overbroad considering allegations of negligence based upon nationwide policy decisions regarding the provision and utilization of mechanized electronic carts for customers).

Request number 51 requires the production of "all documents created, published, distributed or generated in the two years prior to the Work starting at the Well through present that discuss, refer or relate to any accidents resulting in serious personal injury or death at any other well sites, including without limitation any liability determinations, reports or databases." The Texas Supreme Court has held that evidence of "other accidents" may be relevant to show whether a product or procedure was unreasonably dangerous, a warning should have been given, a safer design was available, or a manufacturer was "consciously indifferent toward accidents in a claim for exemplary

14

damages." *Nissan Motor Co. v. Armstrong*, 145 S.W.3d 131, 138–39 (Tex. 2004). In gross

negligence cases, such as here, the Texas Supreme Court has stated that the "degree of

reprehensibility," which is the most important factor in determining the reasonableness of

a punitive damages award, is determined, in part, by considering whether "the conduct

involved repeated actions or was an isolated incident." *Horizon Health Corp. v. Acadia*

*Healthcare Co.*, 520 S.W.3d 848, 875 (Tex. 2017) (discussing that the existence or

absence of other similar incidents bears upon the question of recidivism). As mentioned

above, we have previously addressed whether the scope of discovery about other

incidents is limited to the location of the incident or extends to a broader geographic region

is determined in light of the pleadings:

> [T]he instant case concerns allegations of negligence on the part of HEB based not only on a premises defect specific to a particular location, or on employee conduct at a specific location, or on criminal conduct occurring at a particular location, but on its nation-wide policy decisions regarding the provision and utilization of mechanized electronic carts for customers . . . . Moreover, HEB has not presented argument or evidence indicating that the policies and procedures vary from store to store and, accordingly, has failed to show that other locations are not relevant. *See In re Deere & Co.*, 299 S.W.3d at 820–21 (holding that it was not error to allow discovery as to various product lines where manufacturer failed to present evidence showing that the product lines lacked the assembly at issue, although the order nevertheless exceeded the scope of permissible discovery by neglecting to set a reasonable time limit) . . . . Finally, it must be noted that the petition in this case asserts claims related to an incident involving an HEB customer riding a motorized vehicle inside an HEB store, and the discovery request seeks information about prior reports related to HEB customers riding motorized vehicles inside HEB stores. There is a direct relationship between the claims at issue and the discovery sought.

*In re HEB*, 2010 WL 4523765, at *5–6; *see In re Walmart, Inc.,* No. 08-20-00191-CV,

2021 WL 1153033, at *6, __ S.W.3d __, __ (Tex. App.—El Paso Mar. 26, 2021, orig.

proceeding) (stating that, with regard to other similar incidents, "the scope of discovery is

15

dictated by the pleadings in the case"); *see also In re Methodist Primary Care Grp.*, 2017 WL 3480292, at *2 ("Courts measure the scope of discovery by the live pleadings regarding the pending claims."); *In re Booth*, No. 14-14-00637-CV, 2014 WL 5796726, at *2 (Tex. App.—Houston [14th Dist.] Oct. 21, 2014, orig. proceeding) (mem. op.) (per curiam) (denying mandamus relief regarding the scope of discovery after reviewing the pleadings); *In re Citizens Supporting Metro Solutions, Inc.*, No. 14-07-00190-CV, 2007 WL 4277850, at *3 (Tex. App.—Houston [14th Dist.] Oct. 18, 2007, orig. proceeding [mand. denied]) (mem. op.) ("The scope of discovery is measured by the live pleadings regarding the pending claims.").

In this case, the Allens' pleadings raise allegations regarding relator's alleged negligence based not only on its actions specific to the GD Houston #1 well site, but also on its global safety practices and policies regarding relator's alleged failure to "adequately train its employees and those employees of others under its direction or control as to proper safety procedures which would have prevented the incident in question from occurring," and "to obtain or have the knowledge, training, and experience necessary to safely operate the hydraulic fracturing equipment at the GD Houston Well #1 site." Relator has not presented argument or evidence indicating that its safety training, policies, and procedures vary from location to location, and, accordingly, has failed to show that other locations are not relevant. *See In re Deere & Co.*, 299 S.W.3d at 820–21. There is a direct relationship between the claims at issue, which include claims for gross negligence, and the discovery sought. Accordingly, we reject relator's contentions that this request is otherwise overbroad.

16

Request number 67 requires the production of "all documents that discuss, refer or relate to all instances in which anyone has been injured in an accident involving any part or Component Part, including without limitation, a swage or any other part or Component Part that was pressurized at any wellsite where you had a contract or workers present during the ten years preceding the Work regardless of whether anyone working on your behalf was present when the injury or death occurred." In contrast to the foregoing request number 51, request number 67 has a broader time frame—ten years instead of two—but is narrower in scope by virtue of the limitation to incidents of injury or death resulting from pressurized component parts. This limitation has a direct bearing on the gross negligence claim in the Allens' pleadings because a defendant may be directly liable for punitive damages related to a breach of "the non-delegable duty . . . to furnish safe machinery and instrumentalities." *Burk Royalty Co. v. Walls*, 616 S.W.2d 911, 923–24 (Tex. 1981); *see also Austin v. Kroger Tex., L.P.*, 465 S.W.3d 193, 199 (Tex. 2015) ("It is well established that an employer has certain nondelegable and continuous duties to his employees," including "the duty to furnish reasonably safe instrumentalities with which employees are to work."); *Otis Elevator Co. v. Joseph*, 749 S.W.2d 920, 926 (Tex. App.—Houston [1st Dist.] 1988, no writ) ("Texas law provides that an award for punitive damages against a corporate defendant" may be proper where the defendant "violated the non-delegable duty of providing safe machinery or instrumentalities"); *Delta Drilling Co. v. Cruz*, 707 S.W.2d 660, 666 (Tex. App.—Corpus Christi–Edinburg 1986, writ ref'd n.r.e.) (affirming a gross negligence finding and punitive damage award and noting the "non-delegable duty . . . to furnish safe machinery and instrumentalities").

17

Evidence of other incidents of injury or death resulting from the pressurized component parts at relator's well site is relevant to the alleged hazards and danger of relator's work, and relator's alleged knowledge of a danger, notice of a problem, or conscious indifference toward accidents. *See Nissan Motor Co.*, 145 S.W.3d at 138–41. Moreover, there is "nothing too broad as a matter of law about all discovery orders covering ten years" and "there is simply not sufficient evidence in the record for us to second-guess the scope of the trial court's discovery order." *In re Exmark*, 299 S.W.3d at 531. Accordingly, we reject relator's contentions otherwise.

## B.	Requests for Production Nos. 52 and 53

These requests for production seek documents regarding issues with the component parts of a well:

**REQUEST FOR PRODUCTION NO. 52:**

Produce all documents that discuss, refer or relate to any issue of any kind with any valve or any part or Component Part of a well that was operating under pressure, including without limitation documents that discuss, refer or relate to any of the safety issues concerning valves, safety issues concerning pressurized parts or Component Parts, safety or operational issues concerning failures of any part or Component Part, and/or safety or operational failures of any part or Component Part.

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 53:**

Produce all documents that discuss, refer or relate to of the Well, including without limitation documents that discuss, refer or relate to any of the safety issues concerning valves, safety issues concerning pressurized parts or Component Parts, safety or operational issues concerning failures of any part or Component Part, and/or safety or operational failures of any part or Component Part.

18

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Relator argues that these requests for production are overly broad as a matter of law because they do not limit discovery to a reasonable time. It also asserts that these requests are not limited in scope because they seek documents that discuss "any issue of any kind" concerning "any valve or any part or Component Part" of a well. It argues that these requests cover products that are not relevant to the case, and under supreme court authority, such requests are overbroad. The Allens assert that these requests seek to identify any safety issues or mechanical failures that involve any component part of a well and are "unquestionably" relevant to the subject matter of this case.

We first address relator's contentions that these discovery requests are overly broad because they do not limit discovery to a reasonable period. In this regard, "[d]iscovery orders requiring production from an unreasonably long period period . . . are impermissibly overbroad." *In re CSX Corp.*, 124 S.W.3d at 152.

The Allens assert that relator "falsely" contends that request for production number 52 has no time limitation. They argue that they "agreed in a Rule 191 letter to limit the time duration of Request No. 52 to five years prior to the incident in question." *See* TEX. R. CIV. P. 191. In a supplemental record, the Allens provide the letter in which they "agreed to limit the time duration to five years prior to the incident in question." The Allens further assert that request for production number 53 is limited in duration insofar as it focuses on the specific well at issue in this case, the GD Houston #1 well site, which operated only between the dates of June 9 and June 29, 2017.

We note that neither requests for production numbers 52 and 53 nor the trial court's discovery order regarding these requests contain any temporal limitations. The record does not reflect whether the proposed five-year time limitation for number 52 was discussed by the parties or was rejected by the trial court. Similarly, while the Allens assert that request number 53 is limited in scope because the well at issue only operated for a finite period, they merely support this proposition with the assertion that the definitions for the discovery at issue provide that the "Work" shall mean "any service, maintenance, labor, construction, operation or anything else done at the GD Houston Well #1 from the period starting on June 9, 2017 through and including June 28, 2017." However, request number 53 does not reference "work" and the Allens' suggested limitation is not otherwise supported by the record. Under these circumstances, we focus our review on the order at issue.

As ordered by the trial court, requests for production numbers 52 and 53 do not contain any temporal limitations. *See In re Ford Motor Co*., 427 S.W.3d 396, 397 (Tex. 2014) (orig. proceeding) (per curiam) (concluding that a discovery request for "financial and business information for all cases . . . for a period covering twelve years" was "just the type of overbroad discovery the rules are intended to prevent"); *K Mart Corp. v. Sanderson*, 937 S.W.2d 429, 431 (Tex. 1996) (orig. proceeding) (per curiam) (holding that a request regarding documentation for every criminal act that occurred on the defendant's premises for the last seven years was overbroad); *Dillard Dep't Stores, Inc. v. Hall*, 909 S.W.2d 491, 491–92 (Tex. 1995) (orig. proceeding) (per curiam) (holding that a request for every false imprisonment case in the last five years throughout twenty states was overbroad); *Gen. Motors Corp. v. Lawrence*, 651 S.W.2d 732, 734 (Tex.1983)

(reversing a discovery order without temporal limit and ordering that "[d]iscovery should be limited to records of trucks for model years 1949 through 1972"); *In re Exmark*, 299 S.W.3d at 531 ("While a discovery order that covered a ten-year period might be too broad under some circumstances, there is certainly nothing too broad as a matter of law about all discovery orders covering ten years."). We conclude that requests for production 52 and 53 are overbroad insofar as they contain no temporal limitation. *See In re Ford Motor Co.*, 427 S.W.3d at 397*; K Mart Corp.*, 937 S.W.2d at 431; *Dillard Dep't Stores, Inc.*, 909 S.W.2d at 491–92; *see also In re Bilfinger Westcon, Inc.*, No. 13-19-00466-CV, 2019 WL 6795870, at *7–8 (Tex. App.—Corpus Christi–Edinburg Dec. 12, 2019, orig. proceeding [mand. denied]) (mem. op.).

Relator further argues that these requests cover products that are not relevant to the case, and under supreme court authority, such requests are overbroad. It is abundantly clear that the product subject to discovery need not be the exact same product as that involved in the instant dispute. For example, whether discovery is overbroad in a products liability case depends on whether the order covers products relevant to the case and is reasonable in its scope. *See In re Deere & Co.*, 299 S.W.3d at 820; *In re Graco Children's Prods., Inc.*, 210 S.W.3d at 600–01; *In re Exmark Mfg. Co.*, 299 S.W.3d at 528.

Request number 52 seeks "all documents that discuss, refer or relate to any issue of any kind with any valve or any part or Component Part of a well that was operating under pressure, including without limitation documents that discuss, refer or relate to any of the safety issues concerning valves, safety issues concerning pressurized parts or Component Parts, safety or operational issues concerning failures of any part or Component Part, and/or safety or operational failures of any part or Component Part."

21

This request is limited in scope to component parts of a well operating under pressure, which, based on the Allens' pleadings, is relevant to the claims made regarding the accident at issue in this case. *See In re Sun Coast Res., Inc.*, 562 S.W.3d at 146; *see also In re Methodist Primary Care Grp.*, 2017 WL 3480292, at *2. We conclude that this request was not overbroad in subject.

Request number 53 encompasses "any issue of any kind with any valve or any part or Component Part" of the specific well at issue in this case. We conclude that discovery regarding issues with the specific well that caused Jimmy's alleged injuries is both relevant and discoverable. *See In re Sun Coast Res., Inc.*, 562 S.W.3d at 146; *see also In re Methodist Primary Care Grp.*, 2017 WL 3480292, at *2.

## C.     Request for Production No. 59

This request for production seeks engineering and schematics for the GD Houston Well #1:

> **REQUEST FOR PRODUCTION NO. 59:**
>
> Produce all engineering documents, drawings, diagrams, schematics and models of the equipment, Component Parts or materials that were in use at the Well during the Work.
>
> **OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Relator first asserts that this request for production is overly broad as a matter of law because it does not limit discovery to a reasonable time. It argues that the "engineering drawings and schematics of equipment, component parts, and material can go back decades depending on the particular part or material." However, the request

22

limits the requests to those documents "that were in use at the Well during the Work." As stated previously, both the "Well" and "Work" are defined terms that limit the scope of the request. The request is thus patently limited to the relevant time.

Relator further contends that this request is overbroad because "it seeks information on parts, material, and equipment that were not involved in the underlying suit "and over which this [relator] had no control." "A central consideration in determining overbreadth is whether the request could have been more narrowly tailored to avoid including tenuous information and still obtain the necessary, pertinent information*." In re CSX Corp.*, 124 S.W.3d at 153. The request encompasses "equipment, Component Parts or materials" that were in use at the well during the work, but is not limited to the equipment, component parts, or materials that were in use when Allen was injured, and thus includes discovery of dubious relevance to this case. We are confident that this request can be more narrowly drawn. We conclude that this request is overbroad.

**D.      Requests for Production Nos. 68, 70, and 76**

Requests for production numbers 68, 70, and 76 involve other claims or lawsuits. These requests and correlating objections provide:

> **REQUEST FOR PRODUCTION NO. 68:**
>
> Produce all documents produced in any lawsuit in which you have been a defendant in all cases in which a Person working at any wellsite where you had a contract or workers present was injured or died as a result of the failure of a part or Component Part of the well that was under pressure, including without limitation all deposition transcripts, document productions, interrogatory answers, responses to document requests, responses to requests for admission and pleadings.
>
> **OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in

23

this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 70:**

Produce all documents that discuss, refer or relate to transcripts or recordings of all depositions of your corporate designees for the period beginning two years before the Work at the Well through the present, including without limitation, the transcripts or recordings themselves.

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

**REQUEST FOR PRODUCTION NO. 76:**

Produce all complaint files, letters, or other similar documents identifying or describing the same or similar matters as those alleged by the Plaintiffs in this cause of action against you for the period from the preceding five (5) years to the present, that are in your possession, custody or control, as provided by the Texas Rules of Civil Procedure.

**OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

Relator asserts that request for production number 68 is overly broad as a matter of law because it does not limit discovery to a reasonable time period, because failure of any part or component part of a well does not establish that a prior lawsuit is factually similar to the failure in the case at bar, and because a party may not be forced to produce documents in a lawsuit just because the party produced the documents in an entirely different lawsuit. The Allens assert that it is limited to similar allegations as in this case, that is, litigation concerning a failure of a part under pressure, and further argue that there is "a natural 23-year time limitation on this request because [relator] has only been in operation since 1997."

24

Request for production number 68 is not limited in time. Accordingly, we conclude that it is overbroad insofar as it contains no temporal limitation. *See In re Ford Motor Co.*, 427 S.W.3d at 397; *K Mart Corp.*, 937 S.W.2d at 431; *Dillard Dep't Stores, Inc.*, 909 S.W.2d at 491–92; see also *In re Bilfinger Westcon, Inc.*, 2019 WL 6795870, at *7–8.

In terms of its alleged overbreadth, it seeks "all documents produced in any lawsuit in which you have been a defendant in all cases in which a Person working at any wellsite where you had a contract or workers present was injured or died as a result of the failure of a part or Component Part of the well that was under pressure." This request is relevant and reasonably calculated to lead to the discovery of admissible evidence insofar as it seeks data pertaining to relator's knowledge of the existence of previous accidents and whether such accidents occurred under conditions like those alleged here involving the failure of a pressurized part of the well. *See Nissan Motor Co.*, 145 S.W.3d at 139–40 (discussing the admissibility of third-party complaints regarding the occurrence of accidents).

Relator asserts that request for production number 70 is overly broad because it seeks depositions in cases that are not factually similar to the case at bar. The Allens assert that request number 70 seeks documents which "can reasonably be expected to shed light on [relator's] allocation of responsibility for supervision and training, questions that are at issue in [their] case." However, this request for production is not limited to safety, training, supervision, or issues regarding personal injury and death. Significantly, *Texaco Inc. v. Sanderson* confirmed that the "plaintiffs are entitled to discover evidence of defendants' safety policies and practices as they relate to the circumstances involved in their allegations," but they were not entitled to all documents "on the subject of safety,

25

without limitation as to time, place or subject matter." 898 S.W.2d at 815. Accordingly, the request includes depositions regarding other matters that would have nothing to do with the Allens' claims. We conclude that this request is overbroad.

And finally, relator asserts that request for production number 76 is overbroad and vague because it would require relator to "peruse all evidence it might have." The Allens assert that request number 76 is limited to a specific kind of document that identifies a particular subject matter by reference to their own allegations. This request seeks the production of "all complaint files, letters, or other similar documents identifying or describing the same or similar matters as those alleged by the Plaintiffs." These requests seek specific categories of documents pertaining to other incidents that occurred under "reasonably similar circumstances" or "by means of the same instrumentality" as alleged here. *See In re Sun Coast Res., Inc.*, 562 S.W.3d at 148; *In re HEB Grocery Co.*, 375 S.W.3d at 504; *Columbia Med. Ctr. Subsidiary, L.P.*, 198 S.W.3d at 411–12; *see also In re Houstonian Campus, L.L.C.*, 312 S.W.3d 178, 183 (Tex. App.—Houston [14th Dist.] 2010, orig. proceeding [mand. denied]). We conclude that this request is not overbroad.

E.     **Request for Production No. 75**

Request for production number 75 seeks investigative studies regarding avoiding injuries in the workplace:

> **REQUEST FOR PRODUCTION NO. 75:**
>
> Produce any and all studies or investigations made by you, or at your request and/or on your behalf in any way related to the means or methods to avoid, minimize, eliminate or lessen the risk of problems or injuries stemming from workplace incidents.
>
> **OBJECTIONS:** Defendant objects that this Request is overly broad, unduly burdensome, and seeks information that is neither relevant to any issue in

26

this lawsuit nor reasonably calculated to lead to the discovery of admissible evidence.

The trial court's order limited this request "to a period of 5 years prior to the date of the injury and is further limited to well sites where Defendant performed work." Relator concedes that the trial court's order limits the scope of this request to a five-year period, however relator asserts that request for production number 75 remains overbroad and vague insofar as it requests "any and all studies or investigations made" to avoid workplace incidents. The Allens contend that these limitations render this request specific and not overly broad. We agree and reject relator's contentions otherwise. The Allens' pleadings specifically allege that relator was negligent in failing to properly prepare, initiate or implement standard safe operating procedures for the operation of the hydraulic fracturing equipment at the GD Houston Well #1 site, and failing to adequately train its employees and those employees of others under its direction or control as to proper safety procedures which would have prevented the incident in question from occurring. We reject relator's argument otherwise.

## V. CONCLUSION

The Court, having examined and fully considered the petition for writ of mandamus, the response, and the applicable law, is of the opinion that the petition for writ of mandamus should be granted in part and denied in part. Accordingly, we lift the stay previously imposed in this case. *See* TEX. R. APP. P. 52.10(b) ("Unless vacated or modified, an order granting temporary relief is effective until the case is finally decided."). We grant the petition for writ of mandamus as to requests for production numbers 52, 53, and 68 regarding their temporal scope, and as to requests for production 59 and 70 as

27

specifically discussed herein. We deny the petition for writ of mandamus as to requests for production numbers 51, 67, 76, and 75, and all other relief sought. We direct the trial court to vacate its discovery order as specified and to proceed in accordance with this memorandum opinion. We are confident the trial court will comply, and our writ will issue only if it does not.

GINA M. BENAVIDES
Justice

Delivered and filed on the
4th day of May, 2021.